LAWRENCE, Judge.
Gaylynn Sue Meek (Meek) and her husband Barry M. Meek seek review of a summary final judgment entered against them by the trial court.[1] The facts are not in dispute. Meek and her parents returned to the latter’s home at Cedar Grove, an apartment complex, on March 19, 1990, following an overnight boating trip. They noticed a small box on their doorstep upon entering the apartment. Meek and her mother stepped over the box and into the kitchen to unload several items. A tremendous explosion rocked the entire apartment while they were still in the kitchen. The force of the explosion shattered windows, light fixtures, and also blew a smoke detector and thermostat from the wall. A glass light fixture suspended from the kitchen ceiling shattered and fell on Meek and her mother. Meek screamed and then made her way through the billowing, black smoke to the front door where she *107 saw her father, who lay scorched, mutilated, and dying. Meek did not suffer any significant physical injuries as a direct result of the smoke or shattered pieces of glass that fell on her.
Meek began having insomnia (for which she took prescribed medication) shortly after the bombing, coupled with depression (for which she continues to take prescribed medication), short-term memory losses, an extreme fear of loud noises, bad dreams, and an inability to stop reliving the event. She began psychological treatment within three weeks of the bombing and continued intermittently for a period of two years with three different psychologists. Meek’s sexual relationship with her husband also suffered adversely during this time.
Meek first began experiencing physical impairment in December 1990 (approximately nine months after the bombing), when she developed severe pains in the upper area of her stomach. The pain below her rib cage became worse in January 1991. She became very ill in March 1991, with pain spreading into her chest area. This pain was eased somewhat with ulcer medication prescribed by her physician. She experienced a blockage in her esophagus in November 1991, was unable to swallow, and had difficulty in breathing. The results of a diagnostic test (esophagram) were negative. Meek developed joint pain in her hips and elbows in May 1992, which she treats with Ibuprofen. Meek’s treating physician expressed the following opinion:
I have treated [Meek] for anxiety with depressed mood, orodental dysphagia [esophageal contractions], fibromyalgia [pain in hip and elbow joints], dyspepsia [stomach pains] and irritable bowel symptoms. In my medical opinion, within a reasonable degree of probability, the psychological trauma she suffered as a result of her father’s death has contributed to her physical symptoms and increased [her] need for medical care. Additionally, in my medical opinion, within a reasonable degree of probability, she has suffered from insomnia and anxiety with depressed mood, with situational depression secondary to her father’s death.
Meek sued Zell (owner of the apartment complex) and First Property (apartment managers) alleging that they were negligent in failing to take reasonable steps to protect their tenants and invitees from foreseeable criminal conduct.[2] Defendants filed a motion for summary judgment. They did not dispute the foreseeability of the bombing which killed Meek’s father. They instead asserted that Meek suffered no physical injuries from the shattered glass which hit her during the explosion, and that the physical symptoms which she subsequently suffered did not occur within a “short time” of her psychic injury. The trial court granted summary judgment for the defendants, concluding that there had been no “physical impact” upon Meek as that term is defined by Florida law and “specifically that pieces of glass from a shattered light fixture falling upon a person without cutting that person or injuring that person does not constitute any physical impact.” The trial court further concluded that “unspecified stomach pains, insomnia, difficulty in swallowing and breathing and unspecified pains in the hip and elbow joints do not constitute ‘demonstrable physical injury’ or ‘discernable physical impairments’”; nor do the injuries meet the temporal proximity requirements of Florida law. We reverse.
Florida strictly followed the requirements of the impact doctrine in precluding recovery for psychic injury alone, until the supreme court modified this principle in Champion v. Gray, 478 So.2d 17, 20 (Fla.1985):
We hold that a claim exists for damages flowing from a significant discernible physical injury when such injury is caused by psychic trauma resulting from negligent injury imposed on another who, because of his relationship to the injured party and his involvement in the event causing that injury, is foreseeably injured.
Meek’s claim meets all of the requirements of the Champion holding. She suf *108 fered significant discernible physical injuries which consisted of severe pain in several areas of her body, an esophageal blockage rendering her unable to swallow, and pain in the joints of her hips and elbows. A causal relationship between these physical manifestations and the psychic injury is supported by competent medical evidence. Her relationship to the person involved in the original injury was that of daughter and father. Meek was directly involved in the event; she saw her father bleeding and dying. Thus although we agree with appellees that the shattered glass which fell upon Meek without injuring her, and the black smoke which she breathed, did not constitute an impact within the meaning of that doctrine, we do not regard this as dispositive under Champion.
The interval of time between the psychic injury and the onset of a discernible physical impairment was not an issue in Champion v. Gray, in that the physical impairment (death) occurred within moments of experiencing the psychic injury. Neither was that issue included in the Court’s holding quoted above. The Champion court nevertheless, in dictum, emphasized that the “physical impairment must accompany or occur within a short time of the psychic injury.” Id. at 19. The time interval in the instant ease, in contrast, is the principal issue. The Champion court declined to adopt a pure foreseeability test, but recognized that the public policy of this state required an opportunity to seek compensation for legitimate damages flowing from physical injuries resulting from psychic trauma under some circumstances. The court’s concern was expressed in part as follows;
For this purpose we are willing to modify the impact rule, but are unwilling to expand it to purely subjective and speculative damages for psychic trauma alone. We recognize that any limitation is somewhat arbitrary, but in our view is necessary to curb the potential of fraudulent claims, and to place some boundaries on the indefinable and unmeasurable psychic claims.
Id. at 20.
We view the Champion court’s concern with the need for a short time interval primarily in the terms expressed above. The shorter the interval of time between the psychic injury and the physical injury, the better opportunity there is for avoiding fraudulent claims and defining or measuring the extent of legitimate claims. In the instant case, there is a clear and definitive basis for a jury or fact-finder to conclude that there is a causal connection between the psychic injury and the physical injury. The manifestations of Meek’s psychic injury began immediately with insomnia, depression, short-term memory losses, extreme fear of loud noises, bad dreams, and similar occurrences, resulting in professional treatment within three weeks of the bombing. They continued in a progressive pattern of exacerbation before rising to the level of physical impairment within nine months after the bombing. Thereafter, the resulting physical injuries continued to become more and more serious. The opinion of Meek’s treating physician further strengthened her position that her claim of a causal connection is easily measured and defined, with little or no chance of malingering or other fraudulent conduct.
We thus conclude that under the facts of this case, Meek is not precluded as a matter of law, on a motion for summary judgment, from an opportunity to seek relief under her claim. The trial court’s order granting the defendants’ motion for summary judgment is therefore in error.
We certify the following question to the supreme court as one of great public importance because of the dictum in Champion v. Gray:
IS THE INTERVAL OF TIME BETWEEN A PSYCHIC TRAUMA AND THE MANIFESTATION OF PHYSICAL TRAUMA MERELY ONE ISSUE FOR THE TRIER OF FACT’S CONSIDERATION IN DECIDING WHETHER THE CAUSE OF ACTION RECOGNIZED IN CHAMPION V. GRAY HAS BEEN ESTABLISHED; OR IS THERE SOME ARBITRARY PERIOD AFTER WHICH THE MANIFESTATION OF PHYSICAL IMPAIRMENT WILL BE CONCLUSIVELY PRESUMED NOT TO HAVE BEEN CAUSED BY THE PSYCHIC TRAUMA?
*109 For the reasons expressed, we vacate the summary judgment entered by the trial court in favor of the defendants, and remand for proceedings consistent with this opinion.
BARFIELD and WEBSTER, JJ., concur.

. Meek's complaint sought to allege a cause of action for negligent infliction of emotional distress. A derivative cause of action for loss of consortium formed the basis for the husband's claim.

. It was undisputed that Zell and First Property received threats prior to the bombing but did not warn their tenants or invitees, or otherwise take any reasonable steps to provide for their safety and security.