665 So.2d 1048 (1995)
Samuel ZELL, etc., et al., Petitioners,
v.
Gaylynn Sue MEEK and Barry M. Meek, Respondents.
No. 83806.
Supreme Court of Florida.
October 5, 1995.
Rehearing Denied January 3, 1996.
Jack W. Shaw, Jr. and Michael J. Obringer of Osborne, McNatt, Shaw, O'Hara, Brown & Obringer, Jacksonville, for petitioners.
Christopher C. Hazelip and Clinton A. Wright, III of Rogers, Towers, Bailey, Jones & Gay, Jacksonville, for respondents.
Sharon Lee Stedman of Sharon Lee Stedman, P.A., Orlando, Amicus Curiae for Florida Defense Lawyers Association.
Arnold R. Ginsberg of Perse, P.A. & Ginsberg, P.A., Miami, Amicus Curiae for Academy of Florida Trial Lawyers.
ANSTEAD, Justice.
Gaylynn Sue Meek (Meek) and her husband Barry M. Meek sought review in the district court of a summary final judgment entered against them on their claim for negligent infliction of emotional distress. The district court reversed and certified the following *1049 question as one of great public importance:
IS THE INTERVAL OF TIME BETWEEN A PSYCHIC TRAUMA AND THE MANIFESTATION OF PHYSICAL TRAUMA MERELY ONE ISSUE FOR THE TRIER OF FACTS CONSIDERATION IN DECIDING WHETHER THE CAUSE OF ACTION RECOGNIZED IN CHAMPION V. GRAY [478 So.2d 17 (Fla. 1985)] HAS BEEN ESTABLISHED [part I]; OR IS THERE SOME ARBITRARY PERIOD AFTER WHICH THE MANIFESTATION OF PHYSICAL IMPAIRMENT WILL BE CONCLUSIVELY PRESUMED NOT TO HAVE BEEN CAUSED BY THE PSYCHIC TRAUMA [part II]?
Meek v. Zell, 636 So.2d 105, 108 (Fla. 1st DCA 1994). We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We approve the decision of the district court and answer part I of the certified question in the affirmative, but qualify our answer by holding that the interval of time between the psychic trauma and the physical manifestation is one factor in proving causation. We answer part II of the certified question in the negative and hold that the factual question of causation is to be decided on a case-by-case basis.

FACTS
The facts underlying the Meeks' claim are set out in the district court opinion. Their claim is based on injuries allegedly sustained by Gaylynn Meek after she witnessed her father's death at the hands of an anonymous bomber at the father's apartment. The Meeks sued Samuel Zell (owner of the apartment complex) and First Property (apartment management company) alleging that they were negligent in failing to take reasonable steps to protect their tenants and invitees, including Meek's father, from foreseeable criminal conduct. The Meeks' complaint alleged a cause of action for negligent infliction of emotional distress.
It is undisputed that Zell and First Property received bomb threats prior to the bombing but did not warn their tenants or invitees, or otherwise take any reasonable steps to provide for their safety and security against the threats. Following an overnight boating trip, Meek and her parents returned to the latter's apartment home. Upon entering, they noticed a small box on their doorstep. Meek and her mother stepped over the box and into the kitchen, leaving Meek's father behind. Immediately thereafter, a tremendous explosion rocked the entire apartment. The force of the explosion shattered windows and light fixtures and blew a smoke detector and thermostat from the wall. A glass light fixture suspended from the kitchen ceiling shattered and the debris fell on Meek and her mother. Meek screamed and then made her way through the smoke to the front door where she saw her father, who lay scorched, mutilated, and dying.
Meek did not suffer any significant physical injuries as a direct result of the smoke or shattered pieces of glass that fell on her. However, immediately after witnessing her father's death, Meek began having insomnia (for which she took prescribed medication), coupled with depression (for which she continues to take prescribed medication), short-term memory losses, an extreme fear of loud noises, bad dreams, and an inability to stop reliving the event. Within three weeks of the bombing, she began psychological treatment which continued intermittently for a period of two years with three different psychologists. Meek's sexual relationship with her husband also suffered during this time.
Approximately nine months after the bombing, Meek began experiencing physical impairment in the upper area of her stomach. Thereafter, the pain below her rib cage became worse and she became very ill, with pain spreading into her chest area. This pain was eased somewhat with prescription ulcer medication. Eventually, Meek experienced a blockage in her esophagus, was unable to swallow, and had difficulty in breathing. Meek also developed joint pain in her hips and elbows, which she treats with Ibuprofen. Meek's treating physician expressed the following opinion regarding her condition:
I have treated [Meek] for anxiety with depressed mood, orodental dysphagia [esophageal contractions], fibromyalgia [pain in *1050 hip and elbow joints], dyspepsia [stomach pains] and irritable bowel symptoms. In my medical opinion, within a reasonable degree of probability, the psychological trauma she suffered as a result of her father's death has contributed to her physical symptoms and increased [her] need for medical care. Additionally, in my medical opinion, within a reasonable degree of probability, she has suffered from insomnia and anxiety with depressed mood, with situational depression secondary to her father's death.
On this record, the district court held that under Champion v. Gray, 478 So.2d 17 (Fla. 1985), the Meeks had produced sufficient evidence to entitle them to a trial on their claim for negligent infliction of emotional distress.

LAW AND ANALYSIS
In Champion v. Gray, 478 So.2d 17 (Fla. 1985), we held that persons who suffer a physical injury as a result of emotional distress arising from their witnessing the death or injury of a loved one may maintain a cause of action for negligent infliction of emotional distress. Prior to Champion, Florida adhered strictly to a requirement that some physical impact to a claimant must be alleged and demonstrated before the claimant could recover damages for personal injury. This rule is referred to as "the impact rule." Gilliam v. Stewart, 291 So.2d 593, 595 (Fla. 1974); Crane v. Loftin, 70 So.2d 574, 575 (Fla. 1954).[1]

GILLIAM v. STEWART
The impact rule has not been without its critics and has been abolished in most jurisdictions.[2] In 1972, the Fourth District, believing that the impact rule was "at variance with modern-day needs and with concepts of justice and fair dealing," held that a plaintiff may recover for the demonstrable physical consequences of a mental or emotional disturbance caused by the negligent act of another, even in the absence of an actual physical impact to the claimant. Stewart v. Gilliam, 271 So.2d 466, 472 (Fla. 4th DCA 1972), quashed, 291 So.2d 593 (Fla. 1974). To support its decision, the court discussed and rejected the "three basic arguments which have served as the underlying reasons for adhering to the impact doctrine": (1) the difficulty in proving causation between the claimed damages and the alleged fright or shock; (2) the fear of fraudulent or exaggerated claims; and (3) the possible *1051 flood of litigation. Id.[3]
In Stewart, the plaintiffs sued two drivers for negligently operating their motor vehicles so as to collide with each other, and then to collide with the plaintiffs' house where Jane Stewart was in bed, but not asleep. The complaint alleged that Jane Stewart suffered "shock to her nervous system which resulted in a coronary insufficiency and myocardial infarction and a left lateral cerebellar lesion." Id. at 467. The Fourth District held that these allegations were sufficient to state a claim despite the absence of any physical impact to Mrs. Stewart.
On review, however, we quashed the Fourth District's decision and reaffirmed the validity of the "impact rule," finding that there was no "valid justification to recede from the long standing decisions of this Court in this area." Gilliam v. Stewart, 291 So.2d 593, 595 (Fla. 1974). We cited with approval the dissenting opinion authored by Judge Reed in the district court which opined that "[t]he impact doctrine gives practical recognition to the thought that not every injury which one person may by his negligence inflict upon another should be compensated in money damages." Stewart, 271 So.2d at 477.

CHAMPION
In Champion, we reconsidered our holding in Gilliam and our continuing strict adherence to the impact rule. Walter Champion, as personal representative of his wife's estate, brought an action for damages against a drunk driver whose negligence caused Mrs. Champion's death. The complaint alleged that a drunk driver ran his car off the road, striking and killing Karen Champion, the daughter of Walter and Joyce Champion. Karen's mother heard the impact, came immediately to the accident scene, and, upon seeing her daughter's body was so overcome with shock and grief that she collapsed and died on the spot. 478 So.2d at 18. Considering these compelling facts, we concluded:
[T]he price of death or significant discernible physical injury, when caused by psychological trauma resulting from a negligent injury imposed upon a close family member within the sensory perception of the physically injured person, is too great *1052 a harm to require direct physical contact ["impact"] before a cause of action exists.
Id. at 18-19.
Accordingly, in Champion, we retreated from our strict adherence to the impact rule and recognized for the first time a negligence action for physical injuries occurring without an actual impact:
We hold that a claim exists for damages flowing from a significant discernible physical injury when such injury is caused by psychic trauma resulting from negligent injury imposed on another who, because of his relationship to the injured party and his involvement in the event causing that injury, is foreseeably injured.
Id. at 20. At the same time that we recognized a claim for physical injuries caused by emotional distress, we refused to recognize a claim for psychic harm alone:
The pure foreseeability test, espoused by some, might lead to claims that we are unwilling to embrace in emotional trauma cases. We perceive that the public policy of this state is to compensate for physical injuries, with attendant lost wages, and physical and mental suffering which flow from the consequences of the physical injuries. For this purpose we are willing to modify the impact rule, but are unwilling to expand it to purely subjective and speculative damages for psychic trauma alone. We recognize that any limitation is somewhat arbitrary, but in our view is necessary to curb the potential of fraudulent claims, and to place some boundaries on the indefinable and unmeasurable psychic claims.
Id. (emphasis added). In summary, we rejected the impact rule to the extent that we held that no impact need be shown where psychological trauma could be demonstrated to cause a demonstrable physical injury, but we retained the rule as a bar to psychic injuries resulting from such trauma.[4] Of course, in addition to the requirement of a physical injury, we limited the class of claimants to those "who, because of [their] relationship to the [directly] injured party and [their] involvement in the event causing that injury, [are] foreseeably injured." Id. at 20.[5]
Justice Alderman, in his concurring opinion in Champion, explained that the full contours of the newly recognized cause of action would be shaped by the common law practice of considering each case on its merits:
We today modify to a limited extent our previous holdings on the impact doctrine. In doing so, however, we are unable to establish a rigid hard and fast rule that would set the parameters for recovery for psychic trauma in every case that may arise. The outer limits of this cause of action will be established by the courts of this state in the traditional manner of the common law on a case-by-case basis. Space, time, distance, the nature of the injuries sustained, and the relationship of the plaintiff to the victim of the accident must all be considered. We have listed several relationships which may qualify. These, however, are not exclusive; other relationships may qualify. Each one will be closely scrutinized on a case-by-case basis. The closer the tie in relationship or emotional attachment, the greater the claim for consideration will be. The requirement that the physically injured person be directly involved in the event causing the original injury must *1053 also be scrutinized on a case-by-case basis. Proximity to the accident in time and space does not necessarily mean only direct and immediate sight or hearing at the scene of the accident. Rather, there may be recovery in instances where there is a direct perception of some of the events making up the entire accident, including the immediate aftermath of the accident. This would include but not be limited to the factual situation found in McLoughlin [v. O'Brian, [1982] 2 All E.R. 298 (Eng.H.L. 1982)].
Id. at 21-22. This case and two other recent opinions by this Court confirm the accuracy of Justice Alderman's analysis and forecast.[6]

THE "SHORT TIME" REQUIREMENT
The statement in the majority opinion in Champion that is the focus of the certified question in this case provides:
We emphasize the requirement that a causally connected clearly discernible physical impairment must accompany or occur within a short time of the psychic injury.
Id. at 19 (emphasis added). The district court concluded that this statement was dicta since we did not include a temporal limitation in our summary statement of the holding of the case. While the district court may be correct, we acknowledge that our statement in Champion appears to impose a strict "short time" limitation on the action we approved therein. Today we recede from the statement in Champion that imposed a rigid temporal proximity requirement. On reflection, we believe that temporal proximity, as opposed to being an absolute inflexible requirement, should be utilized simply as a relevant factor to be considered in a factfinder's determination of whether a person has sustained a physical injury as a result of a psychic trauma.[7]
The essence of our holding in Champion was to recognize a claim where an actual physical injury could be demonstrated to be caused by psychic trauma. Temporal proximity will usually be an important factor for the judge or jury to consider in resolving the factual question of causation. Its importance will vary depending on the facts of each case. Obviously, for example, the shorter the interval of time between the psychic impact and the physical injury the more weight this factor may be given. That was the situation in Champion. However, there are other factors pertinent to the causation inquiry. For example, the nature and severity of the injury and the nature of the evidence also help to confirm or rebut the causal connection between the psychic injury and the physical injury. However, the important question is whether the psychic impact caused the physical injury, whether that injury be manifest immediately, or days, weeks, or months later. Just as a physical bruise or injury may ultimately result in a more serious condition not initially apparent, so may the effects of psychic trauma cause a serious physical impairment. Of course, in both instances a claimant has the burden of proving causation.
The alternative to establishing causation through the application of various relevant factors is to announce a time period beyond which claims for negligent infliction of emotional distress are barred. However, we believe such a rule would be wholly arbitrary and, as a practical matter, unworkable. For *1054 instance, initially, we would be faced with defining the "short time" requirement. Would we define it in terms of hours, days, weeks, months, years? Obviously, any fixed limitation would cut off claims that, although possibly valid, involved physical consequences which became manifest after the chosen cutoff date.
Further, we have no rational basis upon which to determine such a limitation. Of course, we could fall back upon a "reasonable" period of time. But that, too, would need definition and would inevitably invite inconsistent results.
We think the fairer and more rational approach is to allow the time interval to be considered as part of the causation issue. Such a rule has long served us in ordinary "impact" cases, and we believe it to be the better rule here. While fraud and the difficulty in evaluating psychic claims may continue to trouble the court system, an arbitrary cutoff for negligent infliction of emotional distress claims would have no remedial purpose except to reduce the number of claims. In fact, establishing an arbitrary cutoff for claims would contravene general public policy by denying persons with meritorious claims access to the courts.[8]
We reaffirm our qualification of the foreseeability test and restate, consistent with Champion, the elements required to allege a cause of action for negligent infliction of emotional distress: (1) the plaintiff must suffer a physical injury; (2) the plaintiff's physical injury must be caused by the psychological trauma; (3) the plaintiff must be involved in some way in the event causing the negligent injury to another; and (4) the plaintiff must have a close personal relationship to the directly injured person.

THIS CASE
We agree with the district court's finding that there is "a clear and definitive basis for a jury or fact-finder to conclude that there is a causal connection between the psychic injury and the physical injury" in this case. Meek, 636 So.2d at 108. In the opinion below, the district court reasoned:
The manifestations of Meek's psychic injury began immediately with insomnia, depression, short-term memory losses, extreme fear of loud noises, bad dreams, and similar occurrences, resulting in professional treatment within three weeks of the bombing. They continued in a progressive pattern of exacerbation before rising to the level of physical impairment within nine months after the bombing. Thereafter, the resulting physical injuries continued to become more and more serious. The opinion of Meek's treating physician further strengthened her position that her claim of a causal connection is easily measured and defined, with little or no chance of malingering or other fraudulent conduct.
Id. As the district court's reasoning indicates, the nature of Mrs. Meek's injuries and the uncontroverted medical testimony also suggest a causal link between the psychic trauma and the physical manifestations. In short, we find some evidence in the record which indicates that the Meeks may be able to establish all the elements of the Champion test for a cause of action for negligent infliction of emotional distress. Accordingly, it was error to enter summary judgment on their claim.

CONCLUSION
In conclusion, we approve the decision of the district court. We answer part I of the certified question in the affirmative but qualify our answer by holding that the interval of time between the psychic trauma and the physical manifestation is one factor in proving causation. Consequently, we also recede from any language in Champion which made temporal proximity of the physical injury a requirement to allege a cause of action for negligent infliction of emotional distress. We answer part II of the certified question in the negative and hold that the factual question of causation is to be decided on a case-by-case basis.
*1055 We remand for proceedings consistent herewith.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, KOGAN, HARDING and WELLS, JJ., concur.
NOTES
[1] However, to suffer an impact, a plaintiff may meet rather slight requirements, such as those described by the Third District in Eagle-Picher Industries, Inc. v. Cox, 481 So.2d 517 (Fla. 3d DCA 1985), review denied, 492 So.2d 1331 (Fla. 1986):

The essence of impact, then, it seems, is that the outside force or substance, no matter how large or small, visible or invisible, and no matter that the effects are not immediately deleterious, touch or enter into the plaintiff's body.
Id. at 527. In Eagle-Picher, the court determined that the inhalation of asbestos fibers, which over time causes serious lung damage, constituted an impact. Id. at 526. This formulation is consistent with our own holdings. See, e.g., Clark v. Choctawhatchee Elec. Coop., 107 So.2d 609, 612 (Fla. 1958). We said, for example, that "an electrical shock, or trauma, or impact, may be administered and not leave an outward sign." Id. In Clark, we held that an electric shock which caused the plaintiff's tongue to thicken, her legs to ache, then buckle, and then caused plaintiff to fall, constituted an impact even though there were no outward signs of trauma such as burns, bruises or scars. Id.
In numerous cases, however, the courts have found that the impact rule was not satisfied because, although there may have been some "touching," it did not rise to the level of impact. See, e.g., R.J. v. Humana of Florida, Inc., 652 So.2d 360, 364 (Fla. 1995) (finding that although "touching of patient by a doctor and the taking of blood for ordinary testing would not qualify for a physical impact, other more invasive medical treatment or the prescribing of drugs with toxic or adverse side effects would so qualify").
In another case the court found no impact when the plaintiff, who was on the ground in the vicinity of a plane crash, felt a mild change in the temperature and air pressure when the plane hit the ground. See Ellington v. United States, 404 F. Supp. 1165, 1166, 1167 (M.D.Fla. 1975); see also Davis v. Sun First Nat'l Bank of Orlando, 408 So.2d 608, 609-10 (Fla. 5th DCA 1981) (holding bank teller had no cause of action against her employer for failing to take reasonable security measures when only impact alleged was bank robber's handing of holdup note to teller), review denied, 413 So.2d 875 (Fla. 1982).
[2] Gonzalez v. Metro. Dade County Pub. Health Trust, 651 So.2d 673, 674 n. 1 (Fla. 1995) (noting that more than 30 jurisdictions have abrogated the impact rule).
[3] As to the first argument, proving causation, the court asserted:

[T]he question of proving or disproving causation between the claimed injuries and damages and the alleged fright or shock may indeed have been a difficult undertaking in 1888 when the impact rule was first announced. Such is not the situation today. An extensive review of medical treatises is not necessary in order to recognize that medical science has come a long way since the turn of the century; the changes brought about by modern scientific techniques and the advancement made by modern medicine have been overwhelming. This is particularly true in the refinement of techniques for diagnosing the causal connection between emotional states and physical injuries.
... .
The question is not really one of "impact" but rather the causal connection between the negligent act and the ultimate injury  a circumstance which in the last analysis does not seem to pose problems any more difficult to solve in a non-impact case than in an impact case. Causation is not peculiar to cases without impact; it is an ingredient in all types of personal injury litigation. The fact that there may be difficulty in proving or disproving a claim should not prevent a plaintiff from being given the opportunity of trying to convince the trier of fact of the truth of the claim.
Id. at 472-73.
With respect to the second argument concerning fraudulent or exaggerated claims, the court stated:
[S]uch an assertion would deny to a plaintiff the right to be heard  the opportunity to present the case to a jury  the chance to be compensated for an injury negligently incurred. Adherence to "impact" on this basis seems to say very little for our system of jurisprudence because it seemingly constitutes tacit admission that our system is incapable of weeding out fraudulent claims... . [T]he courts of this state have been able to separate the genuine from the bogus claims and there is no reason to assume that this problem cannot be properly dealt with in instances where there has been no impact.
Id. at 474.
Finally, as to whether rejection of the impact rule would precipitate a flood of litigation, the opinion noted that:
In those states following the majority rule allowing recovery for psychic injuries without impact "the feared flood tide of litigation has simply not appeared." Nor has it been demonstrated that the amount of litigation in those states with no impact rule is greater than in those states with the impact rule.
Id. at 475 (citation omitted).
[4] On the same day we decided Champion, we decided Brown v. Cadillac Motor Car Division, 468 So.2d 903, 904 (Fla. 1985), wherein we rejected a claim for psychic injuries resulting to a son who witnessed his mother's death, and held that "psychological trauma must cause a demonstrable physical injury such as death, paralysis, muscular impairment, or similar objectively discernible physical impairment."
[5] In fashioning this new action, we relied substantially on Dillon v. Legg, 68 Cal.2d 728, 69 Cal. Rptr. 72, 441 P.2d 912 (1968), and the foreseeability test the California Supreme Court adopted therein to define the bounds of liability in negligent infliction of emotional distress cases. This test takes into account numerous factors to determine the degree of the defendant's foreseeability. See id. 69 Cal. Rptr. at 80-81, 441 P.2d at 920-21. These factors include: (1) the proximity of the plaintiff to the scene of the accident; (2) whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence; and (3) the nature of the relationship between the plaintiff and the victim. Id.
[6] See R.J. v. Humana of Florida, Inc., 652 So.2d 360, 363 (Fla. 1995) (citing Champion for the proposition that "psychological trauma and mental distress are recoverable as elements of damage without direct physical impact in cases where a plaintiff was in the sensory perception of physical injuries negligently imposed upon a close family member and where the plaintiff suffered a discernible physical injury"); Gonzalez v. Metro. Dade County Pub. Health Trust, 651 So.2d 673, 675 (Fla. 1995) (recognizing that the impact rule is not applicable in cases "where a person suffers a significant discernible physical injury caused by the psychological trauma that results from observing the death or physical injury of a close family member that was negligently caused by another").
[7] In 1893, when we first recognized a cause of action for negligent infliction of emotional distress, we were concerned about the quality of proof of a claim for mental suffering. See International Ocean Telegraph Co. v. Saunders, 32 Fla. 434, 446-47, 14 So. 148, 151-52 (1893). We were primarily concerned about the difficulty in valuing mental anguish for damage purposes. Id. As a consequence, we required proof of a concomitant physical injury as a safeguard. Id. We were concerned with the same problem when we modified the impact rule in Champion.
[8] See supra note 3.