BLACK, Judge.
John D. Alessio, as Personal Representative of the Estate of Paola Garza, appeals the entry of final summary judgment rendered in favor of the Florida Insurance Guaranty Association (FIGA). FIGA assumed the handling of the Estate’s claim from insolvent insurance carrier, First Commercial Insurance Company (FCIC), which had reached a settlement with the Estate. Because we find that the Estate’s claim both arose out of the insurance policy and was within the coverage and limits of the policy, we reverse and remand for entry of judgment in favor of the Estate.
I. FACTUAL BACKGROUND
On December 26, 2008, while leaving Miami International Airport with her parents, six-year-old Paola Garza was struck and killed by a “Super Yellow Cab” operated by Y.O.C.A. Radio Communications (Y.O.C.A.). Paola Garza’s parents, Francisco and Grizelda Garza, retained an attorney who requested, pursuant to section 627.4137, Florida Statutes (2008), disclosure of the policy limits of any insurance coverage applicable to the taxicab’s owner and driver from Y.O.C.A. In response to this request, the Garzas were advised that coverage was provided by FCIC, also known as First Commercial Transportation & Property Insurance Company. Correspondence and discussions between the carrier and the Garzas’ attorney revealed the liability limits to be $125,000 per person and $250,000 per occurrence.
FCIC readily offered to pay $125,000, representing the per person policy limit of the insured, payable to the Estate of Paola Garza. However, the Garzas rejected this offer, insisting on the additional $125,000 under the per occurrence limit to resolve the separate causes of action for their own personal injuries. Ultimately, First Commercial Insurance Group (FCIG), the parent corporation of FCIC, accepted the Garzas’ $250,000 settlement offer. In doing so, FCIG expressed some reservations about the merits of the parents’ individual claims but stated that it wished “to avoid exposing our insured to any future litigation on this point and since you have indicated in your letter that you would accept the full $250,000 aggregate limit, we are hereby enclosing two checks; the first for $125,000 payable to the Estate of Paola Garza and a second check for $125,000 payable to the Garzas individually.” The acceptance letter enclosed the two checks, dated March 19, 2009, as well as separate release forms to be signed and notarized by the Garzas, individually, and the Estate.
By letter dated March 30, 2009, the Garzas accepted the checks as the policy limits on behalf of themselves and the Estate. The Garzas also advised FCIG that the individual releases would be executed and returned as soon as possible, that the Estate was in the process of being opened, and that once it was open, the personal representative would execute the release required of the Estate. On June 4, 2009, the Garzas delivered their executed releases to FCIC and notified FCIC that they were opening the Estate. The Garzas’ attorney continued to hold the $125,000 check, payable to the Estate of Paola Garza.
In July of 2009, the Florida Department of Financial Services initiated insolvency proceedings with regard to FCIC, requir *912 ing that FIGA administer FCIC’s covered claims. In the fall of 2009, the Estate of Paola Garza was finally opened. However, by that time the settlement draft payable to the Estate was stale. Counsel for the Estate requested that the draft be reissued, but FIGA refused, asserting that the $125,000 the Garzas were paid was all that they were entitled to receive.
As a result of FIGA’s refusal to reissue the second settlement check, the Estate filed the subject lawsuit, alleging breach of the settlement agreement. FIGA filed a motion to dismiss, contending that it did not breach any legal duty to the Estate because the complaint admitted that FCIC had paid $125,000 to Paola Garza’s parents, which FIGA contended was the limit of FCIC’s policy for claims.
In response, the Estate contended that the facts showed that FCIC, FIGA’s predecessor, entered into a settlement agreement with the Estate by which it agreed to pay the Estate $125,000, the per person limit of the insured’s policy, issued a check in this amount, which was not cashed before FCIC became insolvent, and that FIGA now refused to honor or reissue the check. Thus, the Estate argued that the per person limit of Paola Garza’s bodily injuries had not been tendered nor had the per occurrence limit been exhausted.
On January 3, 2011, the magistrate who heard FIGA’s motion to dismiss issued a recommended order denying the motion. The magistrate’s findings included the following:
Even given the fact that $125,000 was previously tendered to the Garzas it does not defeat the pleading of the present cause of action for the very simple reason that neither FCIC nor FIGA has paid the Estate of Paola Garza for the damages sustained. As alleged by the plaintiff the payment to the Garzas was for their separate injuries; the check issued to the Estate of Paola Garza, while tendered, has never been cashed because of the delays in setting up the Estate in order to execute the release required by the settlement agreement. Accordingly, plaintiffs allegation that FIGA now refuses to reissue the cheek in accordance with the settlement agreement sufficiently states a cause of action for breach of the settlement agreement.
FIGA did not file exceptions to the magistrate’s order and the circuit court entered an order adopting the magistrate’s recommended order. Thereafter, the Estate filed a motion for summary judgment and supporting affidavit, asserting that there was no genuine issue of material fact and that judgment should be entered in favor of the Estate as a matter of law as a result of FIGA’s breach. In response, FIGA filed a countermotion for summary judgment with no supporting affidavits. FIGA contended that the undisputed facts entitled it to summary judgment because plaintiffs were paid all that they were entitled to receive under the policy since the Garzas had only derivative claims for emotional distress. The circuit court denied the Estate’s motion and granted FIGA’s motion.
II. DISCUSSION
FIGA’s contention below was that because there was no record evidence of an impact between the taxicab and the Garzas, and because there was no evidence presented of a physical manifestation of their emotional trauma, the Garzas had only derivative claims which were compensated by the $125,000 paid under the per person portion of the policy. See Zell v. Meek, 665 So.2d 1048, 1054 (Fla.1995). However, it is undisputed that FCIC entered into a valid settlement agreement whereby FCIC agreed to pay the Estate $125,000 and to pay the Garzas an addi *913 tional $125,000 for their individual claims. That is, in order to shield its insured from future litigation, FCIC paid the Garzas’ individual claims without requiring proof of physical injury. By the time FIGA took over, the agreement had been finalized, the individual claims had been paid, and the Garzas had already executed releases and returned them to the insurer. The Estate’s claim, despite being settled, had not been paid.
Thus, the question before this court is whether FIGA is bound by the settlement agreement entered into by its predecessor, FCIC. We have previously rejected the notion “ ‘that FIGA simply steps into the shoes of the insolvent insurer and is obligated to the same extent as that insurer would be.’ ” Fla. Ins. Guar. Ass’n v. Petty, 44 So.3d 1191, 1194 (Fla. 2d DCA 2010) (quoting Fla. Ins. Guar. Ass’n v. All the Way until Bill Vernay, Inc., 864 So.2d 1126, 1129 (Fla. 2d DCA 2003)). However, under the plain language of section 631.54(3), Florida Statutes (2008), a claim is a “covered claim” if it arises out of the insurance policy and “is within the coverage, and not in excess of’ the policy limits. See also Petty, 44 So.3d at 1194. In this case, the Estate’s claim meets these criteria. The arguably questionable payment of the Garzas’ individual claims does not serve to defeat or offset the legitimate claim of the Estate that remains unpaid.[1]
Thus, FIGA’s contention that the Garzas had only derivative claims is irrelevant. In its eagerness to resolve all claims relating to this tragedy for the total payment of $250,000, FCIC was apparently willing to tender payment to the Garzas and forego additional discovery because of its desire to quickly procure global releases on behalf of its insured, a strategy that certainly appears reasonable under the circumstances.
III. CONCLUSION
Based on the foregoing, we vacate the final judgment entered in favor of FIGA and remand this case for entry of final summary judgment in favor of the Estate.
CASANUEVA and MORRIS, JJ., Concur.

. We refer to the Garzas' claims as "questionable” because apparently no record evidence was developed that would support a claim under Zell.