[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————————

No. 23-13550

Non-Argument Calendar

————————————————

JANIRA WIMBERLY,
as Personal Representative of the Estate of
Brandon Wimberly,
JOHNNY J. WATSON,

                                    Plaintiffs-Appellants,

*versus*

KEVIN SELENT,
Special Agent, individually, officer of United States
Department of Homeland Security,
ANDREA RANDOU,
Special Agent, individually, officer of United States
Department of Homeland Security,

UNITED STATES OF AMERICA,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cv-20166-KMM

_____

Before WILSON, JORDAN, and LAGOA, Circuit Judges.

PER CURIAM:

This case concerns the events surrounding an arrest by U.S. Department of Homeland Security Investigations (HSI) Agents on February 12, 2021. HSI Agents Kevin Selent and Andrea Randou surveilled and stopped a vehicle purportedly involved in an international mail-and-wire elder fraud scheme. The suspects in the vehicle included Brandon Wimberly and Johnny Watson. The stop escalated rapidly—Agent Selent killed Brandon Wimberly and severely injured Johnny Watson.

Plaintiffs-Appellants Janira Wimberly (court-appointed Personal Representative of the Estate of her husband, Brandon Wimberly) and Johnny Watson filed suit against Defendants-Appellees Kevin Selent and Andrea Randou. Relevant here, Appellants brought three claims: (1) Fourth Amendment excessive force

violations pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971); (2) negligent infliction of emotional distress (NIED) under the Federal Torts Claim Act (FTCA), 28 U.S.C. §§ 1346(b)(1), 2671 *et seq.*; and (3) assault and battery under the same. The district court dismissed the first two claims under Federal Rule of Civil Procedure 12(c) and, after a bench trial, entered judgment in favor of the Agents on the third. Appellants timely appealed each ruling.

After thorough review of the record and parties' briefings, we affirm the district court's judgments on the pleadings as to the *Bivens* and NIED claims. However, the district court improperly narrowed the scope of the assault and battery claim presented at trial. We therefore vacate and remand the court's bench trial judgment for further proceedings consistent with this opinion.

## I. Facts

In early 2021, HSI worked with local Florida law enforcement to investigate a mail-and-wire elder fraud scheme in Miami. Agents Selent and Randou served as partners during the investigation. The scheme allegedly operated out of Canadian call centers. After obtaining familial information, suspects placed cold calls to elderly individuals across the United States, claimed that a family member needed legal assistance, and coerced these individuals to send cash via mail. As part of this investigation, Agents Selent and Randou intercepted a suspicious package with $12,000 cash sent from an elderly individual in Maryland to a vacant address in Florida. On February 12, 2021, a magistrate judge signed a warrant

4                    Opinion of the Court                    23-13550

authorizing installation of a tracking device in the package.  Using the package's geo-location data, the Agents planned to physically surveil the package's delivery with a team of local police officers. Once picked up by suspects, the surveillance team would follow the package to locate further participants in the scheme.

The United Parcel Service delivered the package to the vacant residence later that day, where Wimberly and Watson waited in a vehicle.  Wimberly retrieved the package and drove away with Watson, while Agents Selent and Randou followed in an unmarked car.  The Agents purportedly observed the vehicle make several erratic turns and thus believed the occupants knew they were under surveillance.  This prompted the Agents to activate blue emergency lights and a siren.  Wimberly ultimately stopped the vehicle on the front yard of a residence.

The officers positioned themselves to see Wimberly and Watson through the windshield, guns drawn.  Agent Selent yelled multiple commands at Wimberly and Watson to not move and show their hands.  With one hand on the wheel, Wimberly allegedly adjusted the vehicle's wheels to face toward Agent Selent. The vehicle lurched toward Agent Selent, and the Agents saw Wimberly reach for a dark object near his waistband.  Thinking Wimberly was attempting to either hit him with the vehicle or fire a weapon at him, Agent Selent fired twenty-two shots at the vehicle, killing Wimberly.  Simultaneously, Watson threw himself out the passenger door.  His torso faced the ground while he remained wrapped in his seatbelt.  Agent Randou repeatedly commanded

Watson to show his hands.  After failing to do so, Agent Selent approached and kicked Watson in the face to gain compliance via the "hard technique."[1]  Watson revealed his hands showing he did not possess a weapon.

Several unmarked surveillance vehicles arrived within seconds.  A search of the car revealed, among other things, a handgun with Wimberly's DNA on it.  Meanwhile, Watson was transported to the Kendall Regional Trauma Center, where he was treated for a gunshot wound to the shoulder and a laceration under his left eye.

## II.    Procedural History

Wimberly's widow and Watson together filed suit against Agents Selent and Randou.  The complaint alleged three claims: (1) Fourth Amendment excessive force violations pursuant to *Bivens*;[2] (2) negligent infliction of emotional distress of Watson under the FTCA; and (3) assault and battery of Watson under the same.  The Agents moved for judgment on the pleadings as to the *Bivens* and NIED claims.  The district court granted the motions and dismissed both claims with prejudice.

---

[1] The "hard technique" is a certain level of force, based upon a continuum, that agents are trained to use when faced with escalating circumstances.  *See* Doc. 100 at 12–17.

[2] Appellants also sought punitive damages against both Agents for the claimed *Bivens* violations.

As to the *Bivens* claim, the district court applied the Supreme Court's recent decision in *Egbert v. Boule* to determine "whether there is *any* rational reason (even one) to think that *Congress* is better suited to weigh the costs and benefits of allowing a damages action to proceed." 142 S. Ct. 1793, 1805 (2022) (quotation marks omitted). The court found that HSI's tasks implicate separation-of-powers concerns and the Agents "carried out HSI's mandate in the same manner that implicated national security in *Egbert* itself." Doc. 47 at 7 (quotation marks omitted and alterations adopted). As a result, the court held that claims under *Bivens* may not lie.

Next, the court rejected Watson's NIED claims as a matter of Florida law. Under Florida law, a claim for NIED requires, in part, "negligent injury to another" and "a close personal relationship to the directly injured person." *Zell v. Meek*, 665 So. 2d 1048, 1054 (Fla. 1995). The court found that the complaint failed in both respects—it merely alleged intentional conduct and failed to allege any close personal relationship between Wimberly and Watson. The court held that as a result, the pleadings failed to state a plausible NIED claim.

The assault and battery claim proceeded to a two-day bench trial. Of note, the parties disputed the claim's scope at the final pretrial conference. The Agents read the claim's thrust as the kick, with the shooting merely forming a predicate to the hard technique; Watson countered that because he "was hit by the shooting, [] it's all part and parcel of the same thing." Doc. 102 at 13. The district court agreed: "Yes, that was my intention, to include that."

*Id.* The bench trial presented evidence surrounding the shooting and kick at length, and each party submitted proposed findings of fact and conclusions of law that encapsulated both aspects under the assault and battery claim. However, when the district court issued its final judgment, it concluded that the complaint "yields the inevitable conclusion" that the assault and battery claim is "based solely upon the injuries [Watson] sustained as a result of Agent Selent's kick." Doc. 108 at 10. As a result, the court confined "its analysis to the narrow question" of compensation for the kick, noting that "much of the evidence has little bearing on the outcome of this case." *Id.* at 11. Because the court found that Agent Selent justifiably kicked Watson for defensive purposes—and questioned Watson's credibility based upon the video evidence—it held that Watson failed to prove his claim by a preponderance of the evidence. *See* Fla. Stat. § 776.05.

Appellants timely appealed.

### III. Discussion

Appellants challenge each of the district court's rulings. First, Appellants contend that the district court erred in dismissing their *Bivens* claims for two reasons: (1) it misapplied *Egbert* by expanding its national security deference beyond its requisite bounds; and (2) there are genuine disputes of material fact that preclude judgment on the pleadings. Second, Watson challenges the district court's reading of his NIED allegations or, alternatively, posits he should be allowed to amend the claim. Finally, Watson contests

the district court's credibility determinations and limited construction of the assault and battery claim.

We address each challenge in turn.

### A. *Standards of Review*

We review an entry of judgment on the pleadings de novo. *United States v. Lopez*, 75 F.4th 1337, 1340 (11th Cir. 2023). "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001). We accept all material facts in the non-moving party's pleading as true and view them in the light most favorable to that party. *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014).

After a bench trial, we review a court's conclusions of law de novo and factual findings for clear error. *Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1230 (11th Cir. 2009). Further, we may review a district court's interpretation of pretrial pleadings for an abuse of discretion. *See Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1461–62 (11th Cir. 1998) (review of a pretrial pleading interpretation that limited avenues for damages).

### B. Bivens *Claims*

The Supreme Court historically recognized three judicially-created causes of action under the U.S. Constitution. The first began with *Bivens*, wherein the Court recognized a Fourth Amendment action against federal officers who conducted a warrantless

home arrest and threatened the petitioner's entire family with the same. *See Bivens*, 403 U.S. at 389–90. Within the decade, the Court recognized two additional causes of action: a congressional staffer's gender discrimination claim under the Fifth Amendment, *Davis v. Passman*, 442 U.S. 228 (1979), and a federal prisoner's inadequate medical care claim under the Eighth Amendment, *Carlson v. Green*, 446 U.S. 14 (1980). However, the Court has since cautioned that these cases "represent the only instances in which the Court has approved an implied damages remedy under the Constitution itself," and characterizes any new actions as "a disfavored judicial activity." *Ziglar v. Abbasi*, 582 U.S. 120, 131, 135 (2017) (quotation marks omitted).

Whether we recognize a proposed *Bivens* claim proceeds in two steps. First, we ask "whether the request involves a claim that arises in a 'new context.'" *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020). A context is "'new' if it is 'different in a meaningful way from previous *Bivens* cases decided by [the] Court.'" *Id.* (quoting *Ziglar*, 582 U.S. at 139). When faced with a new context, we move to step two, where a *Bivens* claim will not lie "if there are 'special factors' indicating that the Judiciary is at least arguably less equipped to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 142 S. Ct. at 1803 (quoting *Ziglar*, 582 U.S. at 136). Thus, these steps "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Id.*

In the present case, the court correctly held that a *Bivens* claim cannot proceed. *Egbert*'s framework and underlying rationales guide our analysis. HSI Agents serve as a branch within U.S. Immigration and Customs Enforcement. The agency's mission heavily emphasizes its "global nature" in combatting crime from "global threats."[3] These circumstances concern the reasonableness of force during a vehicle stop while serving this mission. Appellants hold alternative avenues for relief under either the federal regulations, *see* 8 C.F.R. §§ 287.8, 287.10, or the FTCA, the latter of which Watson presently pursues in this case. We believe these circumstances suggest a new context with special factors that preclude a *Bivens* claim—the Agents operate under a different mandate, with differing circumstances, both of which implicate national security at the particularized and agency-wide level. *See Egbert*, 142 S. Ct. at 1804–09. In other words, this case amounts to "a more 'conventional' excessive-force claim" that presents merely "superficial similarities" insufficient to recognize a *Bivens* claim. *Id*. at 1805. Accordingly, the district court properly granted the Agents' motion for judgment on the pleadings as to these claims.

---

[3]    *See* Homeland Sec. Investigations, *Who We Are*, https://www.dhs.gov/hsi/who-we-are (last accessed May 7, 2024) ("What makes us unique is the global nature of the crimes we investigate and the broad legal authorities available to us to combat them. . . . HSI investigates crime on a global scale" and "conducts federal criminal investigations into the illegal movement of [money] into, out of and through the United States.").

### C. *Negligent Infliction of Emotion Distress*

The FTCA permits a limited waiver of sovereign immunity for tort claims based on "the negligent or wrongful act or omission of any employee of the Government while acting within the scope of [their] office or employment." 28 U.S.C. § 1346(b)(1). The "law of the place where the act or omission occurred" controls. *Id.* Florida law consequently controls this issue.

Under Florida law, negligent infliction of emotion distress requires:

> (1) the plaintiff must suffer a physical injury; (2) the plaintiff's physical injury must be caused by the psychological trauma; (3) the plaintiff must be involved in some way in the event causing negligent injury to another; and (4) the plaintiff must have a close personal relationship to the directly injured person.

*Zell*, 665 So. 2d at 1054. Watson's claim fails on elements three and four. As the district court pointed out, the third element requires "*negligent* injury to *another*." *Id.* (emphasis added). Yet Watson's complaint only alleges intentional conduct across both the shooting and kicking, and "there is no such thing as the 'negligent' commission of an 'intentional' tort." *City of Miami v. Sanders*, 672 So. 2d 46, 48 (Fla. Dist. Ct. App. 1996). Further, the fourth element is entirely absent from his allegations and fails to allege any close personal relationship between Watson and Wimberly. Like the *Bivens* claims, the district court properly granted the Agents' motion for judgment on the pleadings for this claim as well.

### D. Assault and Battery

Florida law similarly guides an assault and battery claim under the FTCA. *See* 28 U.S.C. § 1346(b)(1). An action for assault lies where a person commits "an intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, . . . which creates a well-founded fear in such other person that such violence is imminent." Fla. Stat. § 784.011(1). Battery requires a plaintiff prove that the defendant actually and intentionally struck them against their will, or intentionally caused bodily harm to another. Fla. Stat. § 784.03(1)(a). However, Florida law affords a defense to officers using force to effectuate an arrest: "The officer is justified in the use of any force . . . [w]hich he or she reasonably believes to be necessary to defend himself or herself or another from bodily harm while making the arrest." Fla. Stat. § 776.05(1).

In entering judgment for the Agents, the court highlighted several times that it did not consider whether the shooting itself constituted reasonable force or afforded privilege under Florida law. We note that the district court properly considered Florida's legal standards in its judgment. However, the court improperly limited its review of the bench trial's testimony and evidence to "the narrow question of whether Agent Selent's kick was an assault and battery." Although Appellants' complaint may not prove the picture of clarity, the assault and battery claim references both Agent Selent's shooting and Watson being shot in the shoulder. Further, it incorporates the general allegations preceding its

particulars, which include ample contentions about the shooting's impact. Trial transcripts demonstrate that the bench trial evidence accords with consideration of both the shooting and the kick as part and parcel of the claim, rather than the shooting as mere context.[4] Yet the court's restricted review meant that "much of the evidence ha[d] little bearing on the outcome." Even the parties themselves submitted post-trial proposed findings[5] that incorporated both the shooting and the kick within the assault and battery claim, potentially in reliance on the final pretrial conference discussions and the court's representations that it would include the shooting in its considerations.

Upon review, we believe the court's limited view of the relevant conduct was in error. A fulsome analysis of the force's reasonableness, and any potential privileges, properly includes both the shooting and the kick within its purview.

---

[4] *See, e.g.*, Doc. 100 at 35–42, 105–21 (examining Agent Selent for reasonableness of force for both the shooting and the kick).

[5] *See, e.g.*, Docs. 104-1 at 16–17 ("Because this Court determines that the United States agents acted unreasonably in shooting excessively striking Watson and then kicking him in the face, Plaintiff's claims under the [FTCA] must necessarily be sustained. . . . Special Agent Selent used excessive force to commit assault and battery on [Watson], the Court finds that Plaintiff has establish [sic] by a preponderance of the credible evidence that the shooting and kick to the face was unreasonable."); 105-1 at 23 ("[T]he only claim left for trial was Count IV, [Watson's] assault and battery claim. Plaintiff bases this claim on the gunshot wound [Watson] sustained to his shoulder and the kick to his face.").

### IV.    Conclusion

Although the district court's judgments on the pleadings were proper, its limited review of the assault and battery claim's conduct was not.  Accordingly, we **AFFIRM** the district court's judgments as to both the *Bivens* and the negligent infliction of emotional distress claims, and **VACATE and REMAND** the district court's assault and battery judgment for further proceedings consistent with this opinion.

**AFFIRMED in part and VACATED and REMANDED in part.**