635 So.2d 961 (1994)
UNITED STATES OF AMERICA, Appellant/Cross-Appellee,
v.
Loren DEMPSEY, et al., Appellee/Cross-Appellant.
No. 81705.
Supreme Court of Florida.
April 21, 1994.
Frank W. Hunger, Atty. Gen., Gregory R. Miller, U.S. Atty., and Robert S. Greenspan and William G. Cole, Civ. Div., Dept. of Justice, Washington, DC, for appellant/cross-appellee.
*962 James F. McKenzie of McKenzie & Soloway, P.A., Pensacola, for appellee/cross-appellant.
KOGAN, Justice.
The United States Court of Appeals for the Eleventh Circuit certifies the following questions to this Court for resolution, pursuant to article V, section 3(b)(6) of the Florida Constitution:
1. DOES FLORIDA LAW PERMIT PARENTS TO RECOVER FOR THE LOSS OF A CHILD'S COMPANIONSHIP AND SOCIETY WHEN THE CHILD IS SEVERELY INJURED?
2. DOES FLORIDA LAW PERMIT PARENTS TO RECOVER FOR THE LOSS OF THE SERVICES OF A SEVERELY INJURED CHILD ABSENT EVIDENCE OF EXTRAORDINARY INCOME PRODUCING ABILITIES?
Dempsey v. United States, 989 F.2d 1134, 1135 (11th Cir.1993). The Eleventh Circuit provides the following statement of the facts and case in its certification:
On February 27, 1988, Pansey Dempsey, wife of Lonney Dempsey, Sr., an enlistee in the United States Air Force, gave birth to a baby girl at Eglin Air Force Base Hospital. The child, Loren, was born with severe breathing difficulties. An attempt to resuscitate her was unsuccessful because the tube meant to bring oxygen to the child's lungs was put down her esophagus instead. About fifty minutes later, the mistake was discovered and Loren was revived. Nevertheless, as the result of oxygen deprivation, she is now severely retarded. It appears that she will never walk or talk and will require care for the remainder of her life. Loren's parents have suffered the loss of a normal relationship with their child.
The magistrate judge to whom this case was assigned held the Government liable for Loren's injuries and awarded approximately $2.8 million to Loren for medical expenses, loss of earnings, and pain and suffering. The magistrate judge awarded the parents $1.3 million for the "loss of society and affection of their child." The Government appealed the award made to the parents. The parents appealed the magistrate judge's denial of damages for the loss of Loren's services.
On appeal, the dispute centers on the recovery available to the parents. The parties disagree about whether Florida law permits parents to recover for the loss of a child's society and affection when the child is severely injured, but does not die. They also disagree about whether parents may recover for the loss of an injured child's services.
989 F.2d at 1134-35. After reviewing Florida law, the circuit court concluded that the questions were unanswered by controlling precedent from this Court and certification therefore was necessary.
In connection with the first question, the Dempseys take the position that this Court previously has recognized a parent's right to recover for the loss of an injured child's companionship and society. The Government maintains that the Court has not recognized this right. We agree with the Dempseys that they are entitled to recover for the loss of Loren's companionship and society under this Court's decisions in Wilkie v. Roberts, 91 Fla. 1064, 109 So. 225 (1926), and Yordon v. Savage, 279 So.2d 844 (Fla. 1973).
It is generally accepted that at common law a father was entitled to compensation for the lost services and earnings of his negligently injured child as well as medical expenses incurred as a result of the injury; however, the father's right to compensation did not extend to damages for loss of the child's companionship. See McGarr v. National & Providence Worsted Mills, 24 R.I. 447, 53 A. 320, 325-26 (1902) (measure of damages in case brought for loss suffered as result of injury to a child is same as that in case brought by a master for the loss of services of his servant or apprentice; the elements of affection and sentiment are not to be considered); see also Sizemore v. Smock, 430 Mich. 283, 422 N.W.2d 666, 668 (1988); Restatement (Second) of Torts § 703, comment h (1977); W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 125, at 934 (5th ed. 1984); John F. Wagner, *963 Jr., Annotation, Recovery of Damages for Loss of Consortium Resulting from Death of Child, 77 A.L.R. 4th 411, 416 (1990); Todd R. Smyth, Annotation, Parent's Right to Recover for Loss of Consortium in Connection with Injury to Child, 54 A.L.R. 4th 112 (1987 & Supp. 1993). The rule that loss of an injured child's companionship is not recoverable has its roots in the common law analogy that was drawn between the parent-child relationship and the master-servant relationship. A child, like a servant, was considered nothing more than an economic asset of the father. See Ripley v. Ewell, 61 So.2d 420, 421-22 (Fla. 1952); McGarr, 53 A. at 325-26; Michael B. Victorson, Note, Parent's Recovery for Loss of Society and Companionship of Child, 80 W. Va.L.Rev. 340 (1978); Jean C. Love, Tortious Interference with the Parent-Child Relationship: Loss of an Injured Person's Society and Companionship, 51 Ind.L.J. 590, 599 (1975-76); W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 125, at 934 (5th ed. 1984). This antiquated perception has met with much criticism. See e.g. Gallimore v. Children's Hospital Medical Center, 67 Ohio St.3d 244, 617 N.E.2d 1052, 1056 (1993); Frank v. Superior Court, 150 Ariz. 228, 722 P.2d 955, 959 (1986); Shockley v. Prier, 66 Wis.2d 394, 225 N.W.2d 495, 500 (1975); Victorson, supra; Love, supra at 599-601. Several of the courts that have broken free of the master-servant analogy have looked to this Court for guidance. See e.g. Gallimore, 617 N.E.2d at 1059 n. 9; Frank, 722 P.2d at 956 n. 2.
Beginning with its 1926 decision in Wilkie, this Court has recognized a parent's right to a child's companionship as a parental right a wrongful injury to which will support an action for damages:
The father's right to the custody, companionship, services, and earnings of his minor child are valuable rights, constituting a species of property in the father, a wrongful injury to which by a third person will support an action in favor of the father.
91 Fla. at 1068, 109 So. at 227. Then in 1973, the Yordon Court expressly stated that recovery for the loss of a child's companionship and society was available to the parent of a negligently injured child. 279 So.2d at 846. Yordon dealt with the issue of whether a mother has a right to recover for losses sustained as a result of a negligent injury to her child. In ruling that a mother has the same right of action as the father, the Court clearly defined that right of action as including recovery for loss of the child's companionship, society and services:
In Wilkie v. Roberts, this Court held that the parent, ... of an unemancipated minor child, injured by the tortious act of another, has a cause of action in his own name for medical, hospital, and related expenditures, indirect economic losses such as income lost by the parent in caring for the child, and for the loss of the child's companionship, society, and services, including personal services to the parent and income which the child might earn for the direct and indirect benefit of the parent.
279 So.2d at 846 (emphasis added). Relying on these prior decisions, numerous commentators[1] and courts[2] have concluded that recovery for the loss of filial consortium is available within this state.
The Government maintains that the decisions in Wilkie and Yordon have been misconstrued and that neither decision authorizes recovery for the loss of a child's companionship and society. We agree that Wilkie can be read as limiting a parent's recovery to the pecuniary losses suffered as a result of *964 a negligent injury to a child.[3] However, even if the law within this state was not clear at the time of the Yordon decision, we read that decision as expanding the common law in this area.
This is a logical conclusion in light of the fact that when our common law rules are in doubt, this Court considers the "`changes in our social and economic customs and present day conceptions of right and justice.'" Hoffman v. Jones, 280 So.2d 431, 435 (Fla. 1973) (quoting Ripley, 61 So.2d at 423). Certainly, in 1973, when this Court set forth the elements of damages that a parent of an injured child is entitled to recover, it was apparent that a child's companionship and society were of far more value to the parent than were the services rendered by the child. Thus, there was an obvious need to recognize this element of damages to fully compensate the parent for the loss suffered because of a negligent injury to the child. The recognition of the loss of companionship element of damages clearly reflects our modern concept of family relationships.
Moreover, even if this Court previously had not expanded the common law to allow recovery for the loss of a negligently injured child's companionship, we would do so now. As was explained in Zorzos v. Rosen, 467 So.2d 305 (Fla. 1985), wherein we declined to recognize a cause of action for loss of parental consortium, we are "not precluded from recognizing [such a right of action] simply because the legislature has not acted to create such a right." 467 So.2d at 307. This Court has repeatedly recognized that our common law "must keep pace with changes in our society." Gates v. Foley, 247 So.2d 40, 43 (Fla. 1971) (granting wife right of action for loss of husband's consortium); See also Hoffman v. Jones, 280 So.2d 431 (Fla. 1973) (replacing rule of contributory negligence with comparative negligence rule); In re T.A.C.P., 609 So.2d 588, 594 (Fla. 1992) (adopting the modern definition of death). The common law may be altered when the reason for the rule of law ceases to exist,[4] or when change is demanded by public necessity or required to vindicate fundamental rights.[5] An expansion of the common law is clearly warranted here.
As explained above, the rule that loss of an injured child's companionship is not recoverable is based on the outdated perception that children, like servants, are nothing more than economic assets to their parents. This master-servant analogy no longer holds true. Rather than being valued merely for their services or earning capacity, children are valued for the love, affection, companionship and society they offer their parents. The Government offers no compelling reason to retain a rule that, under today's standards, simply appears unjust. The loss of a child's companionship and society is one of the primary losses that the parent of a severely injured child must endure. As this Court appears to have recognized twenty years ago, recovery for this loss is necessary to ensure the parent adequate compensation for the losses sustained as the result of such injury. This is particularly true considering the limited damages generally recoverable for the loss of ordinary services rendered by a child under present day standards.
Our legislature has recognized that recovery for loss of companionship is necessary to compensate the minor child of a permanently injured parent. § 768.0415, Fla. Stat. (1993). Similarly, this Court has extended the right to recover for the loss of marital consortium to the wife. Gates, 247 So.2d 40. These legislative and judicial pronouncements make clear that it is the policy of this state that familial relationships be protected and that recovery be had for losses occasioned because of wrongful injuries that *965 adversely affect those relationships. Moreover, in light of the redress available to a husband, a wife, and a minor child for injury to consortium interests, our constitution itself requires recognition of a parent's right to recover for the loss of a severely injured child's companionship. Art. I, §§ 2, 21, Fla. Const.
However, we believe that recovery for loss of filial consortium should be limited in the same manner in which recovery for the loss of parental consortium has been limited by the legislature. Section 768.0415 limits a child's recovery for the loss of a parent's services, comfort, companionship, and society to those losses caused by a significant injury "resulting in a permanent total disability." § 768.0415. Because the right of recovery we recognize here provides redress for injury to the parent-child relationship, the same relationship addressed by the legislature in section 768.0415, we see no reason why the same standard for recovery should not apply in this context.
Accordingly, we hold that a parent of a negligently injured child has a right to recover for the permanent loss of filial consortium suffered as a result of a significant injury resulting in the child's permanent total disability. In this context, we define loss of "consortium" to include the loss of companionship, society, love, affection, and solace of the injured child, as well as ordinary day-to-day services that the child would have rendered. As noted above, in Wilkie and Yordon this Court recognized as recoverable the loss of an injured child's companionship, society and services; thus, treating the two types of losses as integral components of a parent's consortium interest. This treatment is consistent with the conclusion reached by other courts that in its earliest stage, an action for loss of consortium was in fact an action for loss of services, which gradually was expanded to include the intangible elements of companionship, society, love and comfort. After this evolution, services were treated as only one element of the action, with the intangible elements emerging as the focus of consortium actions. Frank, 722 P.2d at 959; accord Gallimore, 617 N.E.2d 1052 (Ohio Supreme Court recently included a child's services as one aspect of parent's consortium interest). In like fashion, we include loss of ordinary day-to-day services as an element of the damages recoverable for the permanent loss of filial consortium. Such services, although no longer of paramount importance to the parent-child relationship, are still a recognizable component of that relationship.
This leads us to the second certified question, which asks whether a parent can recover for the loss of a severely injured child's services absent evidence of extraordinary income-producing abilities. In light of our defining filial consortium to include ordinary services, the answer to this question is both yes and no. To recover for loss of services as part of the consortium interest, no showing of extraordinary abilities is necessary. Loss of services in this context necessarily will be interwoven with the more intangible aspects of the parent's consortium interest. In contrast, in order for a parent to recover a separate award for the loss of a permanently disabled child's services above that recoverable as a general component of loss of filial consortium, the parent must establish that the child had extraordinary income-producing abilities prior to the injury. Accord Gresham v. Courson, 177 So.2d 33 (Fla. 1st DCA 1965) (recovery for loss of services resulting from the wrongful death of a child not recoverable absent a showing that the deceased child had "some extraordinary income-producing attributes"); Williams v. United States, 681 F. Supp. 763 (N.D.Fla. 1988) (same).
Accordingly, the cause is returned to the Eleventh Circuit for further proceedings.
It is so ordered.
BARKETT, C.J., and SHAW and HARDING, JJ., concur.
GRIMES, J., concurs in result only with an opinion in which OVERTON, J., concurs.
McDONALD, J., dissents in part with an opinion.
GRIMES, Justice, concurring in result only.
At common law a father was entitled to compensation for the lost services and earnings *966 of his negligently injured child as well as medical expenses incurred as a result of the injury; however, the father's right to compensation did not extend to damages for loss of the child's companionship. See Restatement (Second) of Torts § 703, comment h (1977); W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 125, at 934 (5th ed. 1984); John F. Wagner, Jr., Annotation, Recovery of Damages for Loss of Consortium Resulting from Death of Child, 77 A.L.R. 4th 411, 416 (1990); Todd R. Smyth, Annotation, Parent's Right to Recover for Loss of Consortium in Connection with Injury to Child, 54 A.L.R. 4th 112 (1987 & Supp. 1993); Sizemore v. Smock, 430 Mich. 283, 422 N.W.2d 666, 668 (1988). In the majority of states, unless the legislature has provided for recovery for the loss of an injured child's companionship and society, the common law rule still stands. See 54 A.L.R. 4th 112 and cases cited therein.
Consistent with the common law rule, in Wilkie v. Roberts, 91 Fla. 1064, 1068, 109 So. 225, 227 (1926), this Court recognized that the parent of a negligently injured child can recover only the pecuniary loss suffered as a result of the injury. The Court explained that the recoverable loss in such cases is limited to two elements:
(1) the loss of the child's services and earnings, present and prospective to the end of minority, and (2) medical expenses in effecting or attempting to effect a cure.
91 Fla. at 1069, 109 So. at 227. This principle was specifically reaffirmed in Youngblood v. Taylor, 89 So.2d 503 (Fla. 1956).
The majority's confusion about a parent's right to recover for the loss of a severely injured child's companionship and society appears to originate from the following statement also found in the Wilkie opinion:
The father's right to the custody, companionship, services and earnings of his minor child are valuable rights constituting a species of property in the father, a wrongful injury to which by a third person will support an action in favor of the father. This is in addition to the right of action the child may have for the personal injury received, with the resulting pain, disfigurement or permanent disability if such results follow. 20 R.C.L. 614.
91 Fla. at 1068-69, 109 So. at 227.
The citation to 20 R.C.L. 615 within the foregoing quotation refers to an out-of-print multi-volume treatise titled Ruling Case Law published in 1918. The writers of Ruling Case Law were clear that "[i]n fixing the damages the court ordinarily cannot consider mental suffering or injury to the father's feelings, or the loss of the society or companionship of the child." 20 R.C.L. 618 (emphasis added). Nonetheless, on page 614, four pages before this statement appears, Ruling Case Law refers to "[t]he father's right to the custody and companionship... of his minor child ..." as a "species of property in the father, a wrongful injury to which by a third person will support an action." This sentence was repeated almost word for word by this Court in Wilkie.
On page 614 of Ruling Case Law, the authors resolve this apparent contradiction. They state that the "species of property" to which they refer can support three sub-sets of wrongful injury cases: (1) physical injury claims, (2) allegations of enticement or wrongful persuasion of a child to leave its father, or employing a child against its father's wishes, and (3) suits based on the seduction of a daughter. 20 R.C.L. 614. Only in the third sub-set, a claim for a daughter's seduction, or possibly in claims under the second sub-set, may a parent-claimant recover for "injury to [the parent's] feelings and paternal happiness, [which was] more important as an element of damages than the actual loss of her services." Id. This injury to parental feelings and happiness was considered to be a loss of companionship, and explains why Ruling Case Law included "custody and companionship" as a species of property at common law for some wrongful injury cases. However, it is equally clear that Ruling Case Law holds that, in physical injury tort cases, a parent may not recover for loss of a child's society or companionship. 20 R.C.L. at 618. By citing Ruling Case Law in Wilkie, it is evident that the court in referring to a "father's right to ... companionship ... of his minor child" under the common law (109 So. at 227) had in mind that damages for such a loss would only be recoverable in non-physical injury cases *967 like those involving the seduction of a daughter.
In Yordon v. Savage, 279 So.2d 844 (Fla. 1973), the Court merely paraphrased the Ruling Case Law citation from Wilkie, thereby recognizing that recovery for the loss of companionship is possible in those cases discussed in Ruling Case Law. Moreover, the sole question in Yordon was whether to extend to mothers the fathers' rights under the common law. There was no issue with respect to what damages could be recovered. Subsequent decisions of four separate district courts of appeal have interpreted Wilkie and its progeny to hold that the damages recoverable by the parent of an injured child are limited to medical expenses and loss of services. Selfe v. Smith, 397 So.2d 348 (Fla. 1st DCA), review denied, 407 So.2d 1105 (Fla. 1981); Brown v. Caldwell, 389 So.2d 287 (Fla. 1st DCA 1980); Hillsborough County Sch. Bd. v. Perez, 385 So.2d 177 (Fla. 2d DCA 1980); City Stores Co. v. Langer, 308 So.2d 621 (Fla. 3d DCA), dismissed, 312 So.2d 758 (Fla. 1975). Thus, there can be no legitimate doubt that, consistent with common law, a recovery for the loss of an injured child's companionship is not available to a parent under Florida law as it currently stands. The real issue in this case is whether we should change the rule for the reasons discussed in the majority opinion.
This Court was faced with a similar proposition in Zorzos v. Rosen, 467 So.2d 305 (Fla. 1985). In that case, minor children were suing for loss of parental companionship resulting from injuries negligently inflicted upon their father by a third party. The Court had not previously recognized this claim. While acknowledging that we had the authority to recognize the claim, we refrained from doing so. Instead, as Justice Shaw wrote:
We agree ... that if the action is to be created, it is wiser to leave it to the legislative branch with its greater ability to study and circumscribe the cause. In addition, we are influenced by the fact that the legislature has recognized a child's loss of parental consortium in a wrongful death action but has not created a companion action for such loss when the parent is injured but not killed. Although this omission may be only an oversight, it strongly suggests that the legislature has deliberately chosen not to create such cause of action.
467 So.2d at 307. Subsequently, the legislature did recognize the claim for loss of parental companionship by the enactment of section 768.0415, Florida Statutes (Supp. 1988), but only in cases of permanent total disability.
Normally, I believe that issues of this nature are best left to the legislature. On the other hand, the legislature has already acted to permit children to recover for the loss of companionship of parents who are permanently and totally disabled, and it is difficult to perceive a distinction in the parents' claim for a permanently and totally disabled child. Therefore, because we are doing no more than following the lead of the legislature in recognizing the severity of the loss suffered by a person whose loved one is permanently and totally disabled, I am willing to concur in this decision.
OVERTON, J., concurs.
MCDONALD, Justice, dissenting in part.
Under existing case law I would answer the first certified question in the negative and the second one in the affirmative. For the reasons expressed by Justice Grimes, the majority misconstrues "consortium" under existing case law. At this time, the only intangible damage afforded a parent because of injury to a child is that child's services, which includes, but is not limited to, the child's earnings. It does not extend to the general satisfaction obtained through the companionship and general love of a child. A parent can, of course, recover direct medical or other expenses incurred in the child's healing process.
I recognize that this court extended a father's cause of action to a mother for injury to a child which had not been previously afforded in Yordon v. Savage, 279 So.2d 844 (Fla. 1973), and we made reciprocal loss of consortium between husband and wife in Gates v. Foley, 247 So.2d 40 (Fla. 1971). Even so, the creation of a new element of damage is one best left to the legislature. I disagree with the majority that article I, *968 sections 2 and 21, Florida Constitution demands, authorizes, or justifies the ruling the majority makes. It may be that the legislature agrees that the time has come to add this element of damage when a child is injured. The legislature, rather than this court, should determine whether this element of damage is available.
Because I am satisfied that existing case law does not allow damages to a parent for loss of consortium of a child, and because I do not think this court as a matter of policy should create such a right, I would hold that such an element of damage is not available to a parent.
A parent is entitled to loss of services under the common law. These are best measured by what a parent would have to pay someone to perform the duties the minor would otherwise do but for the injury. Evidence of extraordinary income-producing abilities is not required.
NOTES
[1] See e.g. Mark L. Johnson, Compensating Parents for the Loss of Their Nonfatally Injured Child's Society: Extending the Notion of Consortium to the Filial Relationship, 1989 U.Ill.L.Rev. 761, 764 n. 33; Todd R. Smyth, Annotation, Parent's Right to Recover for Loss of Consortium in Connection with Injury to Child, 54 A.L.R. 4th 112, 120 n. 20, 128-29 (1987); 25 Fla.Jur.2d, Family Law, § 477 (1992).
[2] See, e.g., Pierce v. Casas Adobes Baptist Church, 162 Ariz. 269, 782 P.2d 1162, 1164 (1989); Masaki v. General Motors Corp., 71 Haw. 1, 780 P.2d 566, 577 n. 9 (1989); Davis v. Elizabeth General Medical Center, 228 N.J. Super. 17, 548 A.2d 528, 531 (Law Div. 1988); Gallimore v. Children's Hospital Medical Center, 67 Ohio St.3d 244, 617 N.E.2d 1052 (1993); Fields v. Graff, 784 F. Supp. 224, 227 (E.D.Pa. 1992); Boucher v. Dixie Medical Center, 850 P.2d 1179, 1183 n. 27 (Utah 1992).
[3] The Wilkie Court appears to have limited the recoverable loss in such cases to:

(1) The loss of the child's services and earnings, present and prospective, to the end of minority: and (2) medical expenses in effecting or attempting to effect a cure.
91 Fla. at 1069, 109 So. at 227.
[4] Gates, 247 So.2d at 43; Randolph v. Randolph, 146 Fla. 491, 1 So.2d 480 (1941) (modifying common law doctrine that gave father superior right to custody of his children).
[5] Waite v. Waite. 618 So.2d 1360, 1361 (Fla. 1993) (holding that doctrine of interspousal immunity is no longer part of Florida's common law): In re T.A.C.P., 609 So.2d at 594.