967 So.2d 930 (2007)
Joshua Lee WATTERS, Jeremy Christian Watters, and Jessica Lauren Watters, Appellants,
v.
WALGREEN COMPANY, a foreign profit corporation, and Tonya M. Peters n/k/a Tonya M. Pearson, Appellees.
No. 1D06-3742.
District Court of Appeal of Florida, First District.
August 31, 2007.
Rehearing Denied October 22, 2007.
Carl Scott Schuler and Brian J. Lee of Law Offices of Carl Scott Schuler, P.A., Jacksonville, for Appellants.
*931 Joseph B. Stokes, III and Travase L. Erickson of Saalfield, Shad, Jay & Stokes, P.A., Jacksonville, for Appellees.
LEWIS, J.
Appellants, Joshua, Jeremy, and Jessica Watters, seek review of a final summary judgment in favor of Appellees, Walgreen Co. and Tonya M. Peters, n/k/a Tonya M. Pearson, on Appellants' claim of negligent infliction of emotional distress. Appellants contend the trial court erred when it entered summary judgment against them on the sole basis that their lack of a "legal familial relationship" with the decedent, their stepfather, barred their claim as a matter of law. We agree. Accordingly, we reverse and remand for further proceedings consistent with this opinion.
Appellants' stepfather died after overdosing on prescription pain medication. They filed suit for negligent infliction of emotional distress, alleging Appellees caused their stepfather's death by negligently providing incorrect instructions with the medication. Appellants allege that Joshua and Jeremy Watters, along with their mother, discovered the decedent's body and suffered emotional pain, mental anguish, and emotional distress as a result. They allege that Jessica Watters suffered similarly when she learned of her stepfather's death while she was away at summer camp.
Appellants' mother, Doris Marie Veronica Smith, testified via deposition regarding the relationship between Appellants and their stepfather. She testified that Appellants' stepfather participated in family activities with Appellants, and in particular, noted that when the decedent's biological son visited, the two did not engage in separate activities from the rest of the family. She testified that the decedent referred to Jessica Watters as "[his] baby" and his "little girl." According to Ms. Smith, Jessica referred to the decedent as "Daddy." Similarly, Ms. Smith testified that Joshua Watters spoke at the decedent's funeral, saying, "My dad was a dad when he didn't have to be."
Appellees filed a motion for summary judgment. They alleged Appellants were not legally entitled to maintain a cause of action for negligent infliction of emotional distress because they had not set forth any of the following: sufficient involvement in the accident, physical injuries resulting from psychological trauma, or a legally sufficient relationship with the decedent. At the hearing on Appellees' motion, arguments centered on the relationship element only. Following the hearing, the trial court entered summary judgment in favor of Appellees on the sole basis that Appellants' lack of a blood or adoptive relationship with their stepfather precluded their claim. In granting summary judgment, the trial court focused on the particular legal title attached to their relationship, finding that the stepparent-stepchild relationship could not support a cause of action for negligent infliction of emotional distress. This appeal followed.
A party seeking summary judgment in a negligence action has a more onerous burden than that borne in other types of cases. Cassoutt v. Cessna Aircraft Co., 660 So.2d 277, 281 (Fla. 1st DCA 1995) (citations omitted). A trial court must draw all reasonable inferences in favor of the non-moving party when ruling upon a motion for summary judgment. Id. (citation omitted). "Summary judgment should be granted cautiously, with full recognition of the right of a litigant to a jury trial on the merits of his cause." Cox v. CSX Intermodal, Inc., 732 So.2d 1092, 1096 (Fla. 1st DCA 1999). If the record reflects even a possibility of a material issue of fact, then summary judgment must be denied. Id. (citation omitted). This Court reviews the trial court's judgment *932 de novo. See Noack v. Blue Cross & Blue Shield of Fla., Inc., 859 So.2d 608, 609 (Fla. 1st DCA 2003); Menendez v. Palms W. Condo. Ass'n, 736 So.2d 58, 60 (Fla. 1st DCA 1999).
Generally, Florida follows the "impact rule," which provides that "before a plaintiff can recover damages for emotional distress caused by the negligence of another, the emotional distress suffered must flow from physical injuries the plaintiff sustained in an impact." R.J. v. Humana of Fla., Inc., 652 So.2d 360, 362 (Fla.1995) (quoting Reynolds v. State Farm Mut. Auto. Ins. Co., 611 So.2d 1294, 1296 (Fla. 4th DCA 1992)). However, in Champion v. Gray, 478 So.2d 17, 20 (Fla. 1985) (receded from on other grounds), the Florida Supreme Court recognized an exception to the requirement that plaintiffs sustain physical impact during the incident giving rise to the cause of action. To qualify for the exception, plaintiffs must satisfy the following elements:
(1) the plaintiff must suffer a physical injury; (2) the plaintiff's physical injury must be caused by the psychological trauma; (3) the plaintiff must be involved in some way in the event causing the negligent injury to another; and (4) the plaintiff must have a close personal relationship to the directly injured person.
Zell v. Meek, 665 So.2d 1048, 1054 (Fla. 1995) (restating the Champion test). When the Champion court crafted this exception, it was aware that allowing claims based on psychic trauma would heighten the risk of fraudulent lawsuits. See id. at 19. However, it found the exception was necessary because harsh application of the impact rule would deny compensation for meritorious claims. See id. at 18-19. Thus, this exception was the result of an effort to strike a balance between these competing considerations and still allow recovery for reasonably foreseeable plaintiffs.
The Champion court determined that the foreseeability question centered on the plaintiff's involvement in the incident giving rise to the cause of action, including the potentially dispositive question of whether the plaintiff suffered physical injury resulting from psychological impact, and his or her relationship to the directly injured person. See id. at 19 (setting forth the Champion test in terms of foreseeability). The Champion court chose not to focus on the particular label attached to a relationship. It was concerned with finding a "close relationship" in the subjective sense, as opposed to "the absence of any relationship or the presence of only a distant relationship." Id. at 19. In fact, the court observed, "A child, a parent, or a spouse would qualify; others may or may not, depending upon their relationship and the circumstances thereof." Id. at 20.
In Zell, the court adopted portions of Justice Alderman's Champion concurrence, which emphasize in no uncertain terms that the relationship element should be "closely scrutinized on a case-by-case basis." Zell, 665 So.2d at 1052 (quoting Champion, 478 So.2d at 21-22 (Alderman, J., concurring)). In particular, Justice Alderman noted that the Champion court was "unable to establish a rigid hard and fast rule that would set the parameters for recovery for psychic trauma in every case." Id. While this observation was pertinent to all four elements of the Champion test, he highlighted the fact that the court had not provided an exhaustive list of qualifying relationships. Id. Instead, he explained, whether a particular relationship qualifies for the exception will depend on the facts of the particular case in which the question arises. See id. Based on the language adopted in Zell, it is clear that *933 the relationship determination is typically a question of fact.
In the instant case, the trial court construed the relationship element[1] as requiring a "legal relationship" between the plaintiff and the directly injured person. On appeal, in support of the trial court's ruling, Appellees rely on Ferretti v. Weber, 513 So.2d 1333 (Fla. 3d DCA 1987) (affirming dismissal of a claim for negligent infliction of emotional distress where "[t]here was no marriage and therefore no legal relationship between the plaintiff and the deceased"), and Reynolds v. State Farm Mutual Automobile Insurance Co., 611 So.2d 1294 (Fla. 4th DCA 1992)(holding the plaintiff did not qualify for the Champion exception because she could not show that she had a familial relationship as well as an especially close emotional attachment to the decedent). In Reynolds, the Fourth District Court of Appeal emphasized the fact that the Champion court used the phrase "close family member." Reynolds, 611 So.2d at 1296. However, the Champion court used this language only to highlight the important public policy considerations driving the exception. See Champion, 478 So.2d at 18-19. In doing so, it pointed out that harsh application of the impact rule would intolerably preclude recovery even for plaintiffs who suffered physical injuries caused by the psychological trauma of witnessing the death or significant injury of a close family member. Id. At the same time, the word "family" is strikingly absent from the holding in Champion and its restatement in Zell. See id. at 20; Zell, 665 So.2d at 1055.
Appellees contend the Florida Supreme Court's citation of Reynolds in R.J. v. Humana of Florida, Inc., 652 So.2d 360, 362 (Fla.1995), indicates agreement with its reasoning. However, the Humana court cited Reynolds only for its articulation of the impact rule. See Humana, 652 So.2d at 362. In Humana, the court did not address the relationship element except to state the Champion exception to the impact rule. See id. at 363. Although the Humana court used the phrase "close family member," it did not discuss the relationship element, as it was irrelevant to the case. See id. Therefore, we reject Appellees' contention that the Florida Supreme Court has approved the requirement of a legal relationship as an element of the Champion exception.
Appellees' position is inconsistent with the "case-by-case" consideration of the relationship element urged by the Florida Supreme Court. The court expressly intended to have the "full contours" of this cause of action "shaped by the common law practice of considering each case on its merits." Zell, 665 So.2d at 1052. As noted by Judge Farmer in a well-reasoned dissenting opinion in Reynolds, the Champion opinion envisioned "a category of persons joined by ties beyond an entirely formal, legal relationship formed by blood, or for that matter, marriage vows." Reynolds, 611 So.2d at 1299-1300 (Farmer, J., dissenting). Judge Farmer opined that the court intended to leave open the potential of recovery for plaintiffs whose relationship to a decedent was "more than incidental, yet less than solemn." Id. at 1300. The Reynolds majority's contrary interpretation cut off recovery for a plaintiff even though the decedent's mother testified that but for the accident, the plaintiff and decedent would have married. 611 So.2d at 1295. Notably, the supreme court had an opportunity to modify the Champion *934 test when it set out the elements of the exception in Zell. Even though the Zell decision was rendered after Ferretti, Reynolds, and Humana, the court chose not to recognize a rigid "legal relationship" requirement in its articulation of the exception. See Zell, 665 So.2d at 1054.
Relying on the Ferretti holding, the trial court neglected to make a finding as to whether Appellants had a close emotional attachment to their stepfather based on the particular circumstances of their relationship. On the facts before us, we conclude that the relationship element of the Champion exception does not preclude Appellants from an opportunity to seek relief on their claim.[2] However, we express no opinion as to whether Appellants meet the remaining requirements of the Champion exception.
For these reasons, we disagree with the interpretations of the Champion test given by the Third and Fourth District Courts in Ferretti and Reynolds, to the extent that they require a formal "legal relationship" as an element of the exception to the impact rule. Accordingly, we REVERSE, REMAND and CERTIFY CONFLICT.
WEBSTER and THOMAS, JJ., concur.
NOTES
[1] Because neither the trial court nor the parties addressed the other three elements, we do not consider them here.
[2] In any event, the "legal relationship" requirement would prove unworkable, as we have found no relevant definition of a "legal relationship." Appellees contend the Florida Wrongful Death Act's definition of "survivors" should govern. See § 768.18(1), Fla. Stat. (2005). However, application of a statutory definition for a statutory cause of action would be inappropriate for this common law claim.