987 So.2d 93 (2008)
Judith S. BASHAWAY, Appellant,
v.
CHENEY BROS., INC., a Florida corporation and Alex E. Roberts, Appellees.
No. 1D07-1615.
District Court of Appeal of Florida, First District.
May 15, 2008.
Rehearing Denied August 4, 2008.
Barry E. Newman of Spohrer & Dodd, P.A., Jacksonville, and John S. Mills of Mills & Creed, P.A., Jacksonville, for Appellant.
Jerry K. McKim and David S. Tadros of Walton, Lantaff, Schroeder & Carson, LLP, West Palm Beach, for Appellees.
KAHN, J.
Appellant, Judith Bashaway, maintains a long-term committed relationship with her partner, Melinda Garrison. Melinda suffered injuries in an automobile accident and brought a civil action against appellees, Cheney Brothers, Inc., and Alex Roberts (collectively "Cheney"). Judith joined Melinda as a plaintiff in that suit. Count III of the suit concerned a claim made by Judith for loss of consortium. Cheney moved for dismissal of Judith's claim, setting out that Judith and Melinda were not legally married at the time of the injury and further that section 741.212, Florida Statutes (2006), prohibits recognition of marriage between persons of the same sex in any event. The circuit court granted the motion and entered final judgment against Judith as to Count III. We affirm *94 because a consortium claim under Florida law is a derivative claim dependent upon legal status that does not exist in the present case.
On appeal, Judith makes two arguments. Initially, she contends that a claim for loss of consortium under the common law in Florida should turn on the seriousness of the relationship between the partners and not whether the partners are technically married. Alternatively, she asserts that Florida common law should recognize an exception to the marriage requirement for same-sex partners because they are prohibited in Florida from becoming legally married.
Cheney counters Judith's arguments by pointing out that, although the Florida Supreme Court has, over time, expanded and modified certain common law notions of consortium, the claim nevertheless enures only in favor of actual family members. This is so, Cheney asserts, because consortium claims compensate for loss within the family unit, and no Florida court has expanded such claims beyond the confines of the nuclear family. Such claims, then, derive solely from the relationship.
No dispute exists as to Judith's allegation that she and Melinda have a committed, exclusive, and intimate relationship. Accordingly, the question becomes whether a relationship such as that maintained by Judith and Melinda may, upon a case-by-case factual analysis, become the equivalent of a valid marriage for purposes of a consortium claim. We answer in the negative because this court does not have the authority to affirm that proposition.
Judith notes Florida cases expanding the scope of consortium rights. Before 1971, no woman in Florida could bring a claim for loss of consortium. See Gates v. Foley, 247 So.2d 40 (Fla.1971). As recently as 1952, the Florida Supreme Court considered and rejected an argument that the claim for consortium should be extended to a wife where the husband has been permanently injured. Ripley v. Ewell, 61 So.2d 420 (Fla.1952). The Ripley court declined to extend the right, finding that such an argument would be more appropriately made to the Legislature.
Nevertheless, and despite a period of legislative inaction, the Florida Supreme Court overruled Ripley in Gates some nineteen years later. Observing that under the then-extant 1968 state constitution, Florida recognized no distinction between married women and married men in holding, controlling, disposing, or encumbering of property, the Gates court could identify no valid reason to justify continued "disparity in the spouses' relative rights to secure damages for loss of consortium." 247 So.2d at 44. Although the Florida Supreme Court expanded the claim to include the wife, it did not change the underlying nature of the claim and, in fact, such expansion was necessary because the wife, as well as the husband, is apt to suffer "a real injury to the marital relationship." Id. Importantly, and difficult for Judith's position in the present case, the court squarely held that the right of action for loss of consortium "is a derivative right." Id. at 45. Under Gates, therefore, the right continues to derive from the legal relationship.
The Florida Supreme Court has also modified the common law with regard to a parent's claim for loss of consortium of a child, referred to as filial consortium. Under the common law, in the event of a child's disability, the father could recover for the economic loss of the child's services and earnings, but could not be compensated for loss of the child's companionship. See United States v. Dempsey, 635 So.2d 961, 962 (Fla.1994). The common law had *95 viewed the rights of a father to the services and earnings of a child as "valuable rights, constituting a species of property in the father." Wilkie v. Roberts, 91 Fla. 1064, 109 So. 225, 227 (1926). In 1994, the Dempsey court replaced this property-based notion with what it viewed as a more modern and just concept that "[r]ather than being valued merely for their services or earning capacity, children are valued for the love, affection, companionship and society they offer their parents." 635 So.2d at 964. Accordingly, the Dempsey court extended the loss of filial consortium to include loss of a child's companionship and society. Id. at 965. This claim derives, however, from the relationship between parent and child. Evidencing this conclusion, the Dempsey court observed, "[I]t is the policy of this state that familial relationships be protected and that recovery be had for losses occasioned because of wrongful injuries that adversely affect those relationships." Id. at 964-65.
Judith also attempts to draw a comparison with Florida's expanded recovery for the tort of negligent infliction of emotional distress. She cites such cases as Champion v. Gray, 478 So.2d 17 (Fla.1985), and Zell v. Meek, 665 So.2d 1048 (Fla.1995), for the proposition that the plaintiff in such a tort claim must only have a close personal relationship to the directly injured person. She acknowledges that certain Florida courts have concluded that a close personal relationship must, in fact, be a legal relationship such as marriage. See Ferretti v. Weber, 513 So.2d 1333 (Fla. 3d DCA), rev. dismissed, 519 So.2d 986 (Fla.1987); Reynolds v. State Farm Mut. Auto. Ins. Co., 611 So.2d 1294 (Fla. 4th DCA 1992), rev. denied, 623 So.2d 494 (Fla.1993). Judith argues, however, that the First District has now adopted a case-by-case approach for determining whether a close personal relationship is sufficient, without requiring a legally recognized relationship. See Watters v. Walgreen Co., 967 So.2d 930 (Fla. 1st DCA 2007).
This argument, in our view, ignores that the claim for negligent infliction of emotional distress is a direct tort claim rather than a derivative claim. Accordingly, the analysis in Watters turned upon such factors as whether the claimant was a reasonably foreseeable plaintiff. 967 So.2d at 932. As this court noted in Watters, "[T]he foreseeability question center[s] on the plaintiff's involvement in the incident giving rise to the cause of action, including the potentially dispositive question of whether the plaintiff suffered physical injury resulting from psychological impact, and his or her relationship to the directly injured person." Id. Such analysis was necessary because the tort of negligent infliction of emotional distress presumes that the plaintiff has suffered a physical, and not merely a psychological, injury, and moreover that the plaintiff was "involved in some way in the event causing the negligent injury to another." Zell, 665 So.2d at 1054.
Judith claims no personal involvement in the event causing her loss, nor does she claim physical injury. She thus recognizes that her claim derives from the injuries inflicted upon Melinda. In truth, we see no more than a vague and distant analogy between the negligent infliction cases and the present claim for consortium loss. No Florida case holds, or even suggests, the viability of a consortium claim independent of a legal relationship between the consortium claimant and the injured party.
Judith next asks that we create an exception to the marriage requirement because Florida law prohibits same-sex couples from marrying. See § 741.212, Fla. Stat. (2006). Having previously concluded that the loss-of-consortium claim is dependent upon a recognized legal relationship, *96 we have little difficulty disposing of this argument. Florida has stated as its public policy that a legal relationship is simply unattainable for a couple such as Judith and Melinda. Although expressing no disrespect whatsoever concerning that relationship, we cannot see how a court in Florida could ignore the clear import of the Florida legislation. By prohibiting the establishment of a marital relationship between persons other than male and female, the Florida Legislature has left inescapable the conclusion that such legal rights as would flow from marriage will likewise not be recognized in Florida, absent some factor not present here.[*]
Contrary to Judith's implied assertion, many persons involved in close relationships find themselves without any possibility of a claim for loss of consortium. This would be true for brothers and sisters, and perhaps even for close friends who have developed, over time, a living arrangement. The emotional injury, no matter how deeply felt, however, does not give rise to the claim; instead, the existence of the legal relationship fosters the claim. "There has to be a line drawn somewhere, and absent legislation it would be improvident for this court to extend it." Tremblay v. Carter, 390 So.2d 816, 818 (Fla. 2d DCA 1980); accord Fullerton v. Hosp. Corp. of Am., 660 So.2d 389 (Fla. 5th DCA 1995).
AFFIRMED.
WOLF and VAN NORTWICK, JJ., concur.
NOTES
[*] The present case, of course, has to do with the rights and liabilities of third persons. Florida law has long recognized that an agreement between unmarried, cohabitating parties, once proven, will be enforced by the courts. See, e.g. Posik v. Layton, 695 So.2d 759 (Fla. 5th DCA 1997); Crossen v. Feldman, 673 So.2d 903 (Fla. 2d DCA 1996); Stevens v. Muse, 562 So.2d 852 (Fla. 4th DCA 1990).