[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-11782
Non-Argument Calendar
_____

D.C. Docket No. 8:14-cv-02741-EAK-TBM

LINDSEY SUTHERLAND,

Plaintiff - Appellant,

versus

BOEHRINGER-INGELHEIM PHARMACEUTICALS, INC.,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(July 7, 2017)

Before TJOFLAT, MARCUS, and JORDAN, Circuit Judges.

PER CURIAM:

Lindsey Sutherland, proceeding *pro se*, appeals the district court's grant of summary judgment in favor of Boehringer-Ingelheim Pharmaceuticals, Inc. on her employment discrimination claims and state law claims for negligent infliction of emotional distress and negligent hiring, supervision, and retention.  Boehringer, in response, argues that Ms. Sutherland failed to provide evidence demonstrating a dispute of material fact related to any of her claims.  After review of the record and the parties' briefs, we affirm.

**I**

Because we write for the parties, we assume familiarity with the underlying record and recite only what is necessary to resolve this appeal.

Ms. Sutherland, a 34-year-old Caucasian female with two children, was hired by Boehringer, a pharmaceutical company, as a sales representative in November of 2007.  Over the course of her employment with the company, Ms. Sutherland was supervised by several district managers and she was continuously unhappy with the treatment and supervision that she received.

In August of 2010, Ms. Sutherland was promoted to a level two sales representative by her then-supervisor, John Steadman.  Around that same time, however, Ms. Sutherland alleges that she was discriminated against, harassed, and denied opportunities for advancement based on her gender and familial

2

responsibilities.  Ms. Sutherland says that under Mr. Steadman's supervision, she was not given an opportunity to participate in a training program that could have led to her eligibility for a higher position, denied materials to learn a second language by two managers, and issued a poor performance review that affected her salary and commission structure.

In June of 2013, Scott Wyman began supervising Ms. Sutherland.  At some point after Mr. Wyman took over, Ms. Sutherland informed the company that she had been diagnosed with mitochondrial disorder (a neuromuscular disease that impairs her ability to work), which she claims was caused by her work environment, her supervisors' inappropriate comments, and Boehringer's failure to prevent pervasive harassment against her during her employment.  From October of 2013 to April of 2014, Ms. Sutherland took a short-term disability leave of absence, and she received full pay and benefits during that time.  Ms. Sutherland returned to work for only a couple of days after her six-month leave of absence ended, and she has been on long-term disability ever since.[1]

In September of 2014, Ms. Sutherland sued Boehringer in Florida state court, alleging employment discrimination based on her gender under the Florida Civil Rights Act, *see* Fla. Stat. § 760.10, and hostile work environment (Count I),

---

[1] Since Ms. Sutherland's temporary leave ended, she has received over $3000 in Social Security disability benefits per month and additional disability benefits from her insurance company.  In addition, her entire family stayed enrolled in Boehringer's health benefit plan until her formal termination in August of 2016.

3

disability discrimination under the FCRA (Count II), retaliation in violation of the FCRA and Fla. Stat. § 448.102 (Count III), negligent infliction of emotional distress (Count IV), and negligent hiring, retention, and supervision (Counts V and VI). Boehringer removed the case to federal court and moved for summary judgment on all of her claims. Recognizing that Ms. Sutherland had not supported her claims by submitting deposition transcripts, requests for admissions, interrogatory answers, affidavits in opposition to the company's motion for summary judgment, or any evidence that met the admissibility requirements under Federal Rule of Civil Procedure 56(c), the district court entered summary judgment in favor of Boehringer in March of 2016.[2]

Ms. Sutherland now appeals.

## II

We review a district court's grant of summary judgment *de novo*, viewing the evidence in the light most favorable to the nonmoving party. *See Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1211 (11th Cir. 2008). Summary judgment is appropriate when, after adequate time for discovery, the record shows that there is no genuine issue of material fact and the moving party is entitled to

---

[2] We note that Ms. Sutherland was represented by counsel in the district court. Although Ms. Sutherland did not file a separate statement of disputed facts and failed to authenticate documents that she relied on, the district court reviewed the entire record before granting Boehringer's motion for summary judgment, including Ms. Sutherland's complete deposition transcript. *See* D.E. 38 at 4 n.2. The district court also fully considered each of Ms. Sutherland's claims, including a hostile work environment claim that was listed in the gender discrimination count rather than in a separate count in her complaint. *See id.* at 2 n.1.

4

judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A party asserting that a fact is genuinely disputed must support her assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c). The substantive law identifies the facts that are material to a claim, and only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, no genuine issue of fact exists "unless the non-moving party establishes, through the record presented to the court, that it is able to prove evidence sufficient for a jury to return a verdict in its favor." *Cohen v. United Am. Bank of Cent. Fla.*, 83 F.3d 1347, 1349 (11th Cir. 1996) (citation omitted). Although we generally construe a *pro se* litigant's filings and briefs liberally, "issues not briefed on appeal by a *pro se* litigant are deemed abandoned." *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008).

### III

Title VII makes it unlawful for an employer to discriminate against any individual with respect to employment based on the individual's race, color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e-2(a)(1). The Florida Civil Rights Act similarly prohibits discrimination on the basis of race, color, religion,

sex, and national origin, but it also covers age, handicap, and marital status.  *See* Fla. Stat. § 760.10.  Because the FCRA was patterned after Title VII, "decisions construing Title VII are applicable when considering claims under the [FCRA]." *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998).

A *prima face* case under Title VII generally requires an individual "to show that: (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) her employer treated similarly situated employees not of the protected class more favorably; and (4) she was qualified for the job." *Evans v. Books-A-Million*, 762 F.3d 1288, 1297 (11th Cir. 2014).  Once an individual creates an inference of discrimination by making out a *prima facie* case, we use the burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973).  The burden therefore shifts to the employer to articulate a legitimate, non-discriminatory reason for the challenged employment action.  *See id.* at 802.  If the employer meets this burden, the inference of discrimination drops out of the case, and the plaintiff bears the burden of demonstrating that the employer's proffered reasons for its decision were pretextual.  *See Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 767–68 (11th Cir. 2005).

Ms. Sutherland first argues that the district court erred in granting summary judgment because she put forward sufficient evidence to establish a *prima facie* case of employment discrimination based on her gender, a hostile work

6

environment, and her disability.  Alternatively, she contends that the district court erred in granting the company's summary judgment motion on her other state law claims.  We will briefly discuss each claim, but because we find no genuine dispute as to any material fact and conclude that Boehringer is entitled to judgment as a matter of law, we affirm the district court's grant of summary judgment.

## A

Ms. Sutherland first argues that she established a *prima facie* case of gender discrimination (Count I).  Although Ms. Sutherland is a member of the class of people protected under Title VII and the FCRA, she has not established that she suffered an adverse employment action—a prerequisite for any Title VII anti-discrimination claim.  *See Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1238 (11th Cir. 2001).  An adverse employment action is "a *significant* change in employment status, such as hiring, firing, failing to promote, reassignment with *significantly* different responsibilities, or a decision causing a *significant* change in benefits."  *Id.* at 1239 (emphasis in original).  Ms. Sutherland claims that she suffered three potential adverse employment actions.

First, she says that she was denied entry into a training program that could have led to her eligibility for a promotion.  Construing the record in the light most favorable to Ms. Sutherland, we accept that she would not have been eligible for another promotion without completing the certified training program.  The record,

7

however, does not demonstrate that Ms. Sutherland actually applied for the training program. Instead, she testified in her deposition that after receiving a promotion to level two sales representative, Mr. Steadman included the training program in her 2011 employee development plan subject to certain conditions like "rais[ing] [her] sales, increase[ing] her sales ability and persuasiveness and learn[ing] [her] products." *See* D.E. 31-1 at 69. Given that Ms. Sutherland did not cite evidence demonstrating that she was actually denied entry into the training program or that she completed the goals Mr. Steadman gave her, we agree with the district court that her alleged lack of training was not a sufficient adverse employment action.[3]

Second, Ms. Sutherland says that she asked both Mr. Steadman and Mr. Wyman to grant her access to the library in order to learn a second language. Ms. Sutherland does not explain why this amounts to an adverse employment action other than saying that some of her customers speak Spanish. In addition, the record indicates that Ms. Sutherland did not submit the required form to obtain access to the library. *See* D.E. 31-1 at 19.

Third, Ms. Sutherland claims that a negative performance review affected her pay in 2012. But, as the district court pointed out, Ms. Sutherland did not cite any record evidence to corroborate her claim that she received a low raise that year

---

[3] Furthermore, Ms. Sutherland has not shown that entry into the training program was offered to individuals outside of her protected class. Instead, she claims that a woman with lower sales than her (and that did not have children at the time) was treated more favorably and that a man with lower sales than her was given a "pass" and received a better yearly evaluation.

and admitted she did not fully understand her commission structure. *See* D.E. 31-1 at 4, 37–38. Accordingly, the district court did not err in granting summary judgment as to Count I.

## B

In addition to her claim for gender discrimination under the FCRA, Ms. Sutherland alleged in Count I that Boehringer created a hostile work environment that interfered with her emotional and physical well-being. In order to establish a hostile work environment claim, Ms. Sutherland was required to put forth evidence showing: (1) that she belongs to a protected group; (2) that she was subjected to unwelcome harassment; (3) that the harassment was based on a protected characteristic; (4) that the harassment was "sufficiently severe or pervasive" to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that her employer was responsible under either a theory of vicarious or of direct liability. *See Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).

A hostile work environment claim generally turns on whether the harassment is "severe or pervasive," and this element has an objective and subjective component. *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999) (en banc). In order to determine whether the alleged harassment objectively altered the terms or conditions of an individual's employment, we consider four

factors: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Id.*

Viewing the record in the light most favorable to Ms. Sutherland, we agree with the district court that she was a member of a protected group and that she put forth evidence showing that her supervisors made unwelcome comments regarding protected characteristics like her gender and familial responsibilities. For example, Ms. Sutherland testified in her deposition that Mr. Steadman often told her to "pay attention to [her] kids that were home" and to consider "all of the things that [she] could do being a stay at home mom." D.E. 31-1 at 19–20.

With regard to the fourth requirement, however, Ms. Sutherland did not provide evidence demonstrating that the harassing comments were sufficiently "severe or pervasive." Ms. Sutherland says generally that several managers "t[ook] their shots at [her] when they could," Br. of Appellant at 16, without citing any evidence in the record. As to frequency, Ms. Sutherland testified that the comments occurred on field rides with Mr. Steadman (which took place approximately every six weeks), but the record does not specify how many times Mr. Steadman made inappropriate comments during the field rides. *Compare Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 60 (1986) (finding that employee's

testimony that manager made regular sexual advances toward her in front of other employees, forced unwelcome sexual encounters between 40 and 50 times, followed her into the restroom, and forcibly raped her on several occasions was sufficiently severe to support a hostile work environment claim). The record also does not include allegations or evidence showing that she was physically threatened or publicly humiliated, and Ms. Steadman has not provided evidence showing that she was unable to perform her job responsibilities. We therefore agree with the district court that the record does not support Ms. Sutherland's hostile work environment claim.

On appeal, Ms. Sutherland also apparently re-characterizes her retaliation claim (Count III) as a retaliatory hostile work environment claim. Because she did not raise that argument in the district court, we decline to consider it now. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004). In addition, she makes only a few passing references to retaliation and has therefore abandoned that issue here. *See Timson*, 518 F.3d at 874. *Cf. Access Now*, 385 F.3d at 1330 (explaining that the rules of appellate procedure require an appellant's brief to "contain, under appropriate headings and in the order indicated . . . a statement of the issues presented for review").[4]

---

[4] In her initial brief, Ms. Sutherland makes a couple of isolated remarks that she was retaliated against for reporting her supervisors' behavior to human resources, but does not cite evidence in the record or lay out reasons for denying summary judgment on that claim. Even if she had

We conclude that summary judgment was properly granted in favor of Boehringer on Counts I and III.

## C

Ms. Sutherland also argues that the district court erred in granting summary judgment on her disability discrimination claim (Count II). "[D]isability-discrimination claims under the FCRA are analyzed using the same framework as [American with Disabilities Act] claims." *Holly v. Clairson Indus.*, *L.L.C.*, 492 F.3d 1247, 1255 (11th Cir. 2007). The ADA prohibits covered employers from discriminating against a qualified individual on the basis of a disability. 42 U.S.C. § 12112(a). To establish a *prima facie* case of disability discrimination under the ADA, an employee must allege that (1) she is disabled; that (2) she is a qualified individual; and that (3) she was subjected to unlawful discrimination because of her disability. *See Holly*, 492 F.3d at 1255–56.

As the district court pointed out, Ms. Sutherland only offered her own self-serving testimony and a single unauthenticated physician's report to establish that she is disabled. Although Ms. Sutherland referenced certain medical records in her deposition testimony, she did not provide them at the summary judgment stage. Because Ms. Sutherland bore the burden of alleging a disability and she did

---

properly briefed the retaliation issue, it fails for the same reasons as her gender discrimination claim because she did not suffer an adverse employment action in this case.

not provide sufficient evidence to infer that she was disabled, the district court did not err in granting summary judgment on Count II.  Moreover, Ms. Sutherland testified that she is no longer able to perform any work.  That admission, if true, would mean that she is not a qualified individual for an ADA claim.  *See Holly*, 492 F.3d at 1256 (explaining that a qualified individual is "someone with a disability who, 'with or without reasonable accommodation, can perform the essential functions of the employment position'") (citation omitted).[5]

## IV

Ms. Sutherland's final arguments relate to her state law tort claims for negligent infliction of emotional distress (Count IV) and negligent hiring, retention, and supervision (Counts V and VI).

Florida law generally requires a plaintiff to show that emotional distress claims flow from physical injuries sustained in an impact.  *See Bodine v. Fed. Kemper Life Assur. Co.*, 912 F.2d 1373, 1376 (11th Cir. 1990); *Florida Dep't of Corr. v. Abril*, 969 So. 2d 201, 206 (Fla. 2007).  Ms. Sutherland asserts that she established a *prima facie* case of negligent infliction of emotional distress because her supervisors' conduct over several years created a work environment "so hostile that it degraded [her] neuro-muscular disease" to the point where any stimuli could

---

[5] We recognize that the ADA uses the same burden-shifting framework as Title VII employment discrimination claims, but we decline to conduct the remainder of that analysis because we agree with the district court that Ms. Sutherland did not establish a *prima facie* case of disability here.

result in hospitalization or a comatose state. *See* Br. of Appellant at 18. Ms. Sutherland apparently tries to invoke a narrow exception to the impact rule by arguing that the psychological trauma that she experienced resulted in physical injuries. In order to qualify for this (rare) exception, Ms. Sutherland was required to show that (1) she suffered a physical injury; (2) her injury was caused by a psychological trauma; (3) she was "involved in some way in the event causing [a] negligent injury to another;" and (4) she had a close personal relationship to the directly injured person. *See Watters v. Walgreen Co.*, 967 So. 2d 930, 932 (Fla. 1st DCA 2007). Here, Ms. Sutherland only offered her own conclusions about her experiences and resulting injuries, but has made no allegation that she witnessed someone that is close to her suffer a direct injury. We agree with the district court that her allegations of physical injury based on her supervisors' comments is too tenuous to serve as an impact and that she has not met the exception in this case.

As for Ms. Sutherland's claims of negligent hiring, supervision, and retention, the only argument she advances is that others had complained about two of her supervisors and that Boehringer decided to retain both managers despite those complaints. Like her filings in the district court, Ms. Sutherland's appellate briefs do not cite to specific portions of the record that can be used to support genuine issues of fact related to the elements of her claims for negligent hiring, supervision, or retention. *See, e.g.*, *Malicki v. Doe*, 814 So. 2d 347, 362 (Fla.

2002) (setting out the requirements for a *prima facie* case of negligent hiring including an employer's duty to investigate an employee, to consider reasons stemming from an investigation as to why the employee may not be suited for a particular position, and the employer's subsequent decision to hire the employee regardless of those reasons). We conclude that the district court properly granted summary judgment on Counts IV, V, and VI.

## IV

Ms. Sutherland failed to offer evidence to establish a *prima facie* case for each of her employment discrimination claims. Moreover, she has not shown that a disputed fact exists related to the essential elements of her state law tort claims. We therefore affirm the district court's grant of summary judgment in favor of Boehringer.[6]

**AFFIRMED.**

---

[6] We decline to consider Ms. Sutherland's new evidence and new argument that the district court judge should be recused because she did not file a motion to supplement the record or to recuse the district court judge below. *See Ross v. Kemp*, 785 F.2d 1467, 1474–75 (11th Cir. 1986) (highlighting that "[w]e have refused to supplement the record when a party has filed [new] material without requesting leave of this court or has appended material to an appellate brief without filing a motion to supplement"). *Cf.* 28 U.S.C. § 144 (setting out the requirements for recusal including that a party should "file[] a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party").

15